## ELLIS. v. THE STATE.

1. The refusal of the court to declare a mistrial because of the language used by State's counsel in argument to the jury was not cause for a new trial.
2. Where a tenant leaves the premises at the end of his term, the landlord, though not in actual occupancy, is to be regarded as in possession, and a third person who enters without the landlord's consent, and violently keeps possession, with menaces, force and arms, and without authority of law, is guilty of forcible detainer. To constitute such offense it is not necessary that the person who has so taken possession should actually assault the landlord; but if, when the landlord seeks to re-enter, the conduct of such person in keeping possession and the circumstances connected therewith be such as are reasonably calculated to cause the landlord to believe that if he should persist in the attempt to re-enter he would be subjected to physical violence, the offense would be complete.
3. The evidence authorized the verdict, and the court did not err in refusing a new trial.

Argued October 18,—Decided November 9, 1905.

Accusation of forcible detainer. Before Judge Hollingsworth, City court of Fayetteville. August 31, 1905.

Mrs. K. C. Ellis was tried for the offense of forcible detainer, and the jury returned a verdict finding her guilty. She made a motion for a new trial, which was overruled, and she excepted. Upon the trial Mrs. L. B. Stewart, the prosecutrix, testified as follows: "My husband, W. B. Stewart, is dead. I know the land in controversy. My husband had tenants in possession of it about five years before he died, and he died on the 16th day of June, 1901, and since that time the tenants under me have been cultivating it and paying rents to me. W. J. Farmer was the first tenant put in by Mr. Stewart, and he stayed until about two years ago, and then H. Henson went in as tenant; making about seven years that Mr. Stewart, my husband, and I have received the rents from the place. Mr. Henson, the tenant for the last year, moved away from the place, and on or about the 30th day of December, 1904, I went to the place and found Mrs. K. C. Ellis in the house and her husband with her. She had one bedstead in the house and some other furniture, consisting of a bureau, chairs, etc., and I noticed that she had a shotgun sitting up by the front door and a rifle by the bed, near where she was. I asked her whose furniture it was, and she said it was hers; and I asked her where our folks were that were here, and she said they had moved over to G. W. Clark's. I asked her what

the furniture was doing there, and she said it was her furniture, that she had moved there; and I asked her why she did so, and she said the place was hers and she intended to keep it until twelve men decided it was not hers. I asked her for the key, and she said she had the key but would not give it to me. I then left her and told her I would see her again. I went back on the 4th day of January, 1905, and saw Mrs. Ellis again, the defendant, and asked her for the key, and she told me that I would never get the key until twelve men decided it was my place—said she would lie in jail six months before she would give it to me. I told her I did not think she had treated me right, and she said it was her place and she would die before she got out, and got excited, and when she said that she came down with one hand into the other, this way [witness holding one hand up and the other out and bringing one hand down into the other]. Her husband walked up and told her to be quiet and not to get excited. The place is in this county. While I was talking to her, her husband and children came up, and I asked her husband why he did not have his wife move back to her place, and he said she claimed the place and was living there because she claimed it. I then told her she would regret this. I then went around and took some nails and nailed up the windows, and as I went around to nail them up, she told me that she had saved me the trouble, as she had already nailed the windows down. I could not nail up the front door; I could not get her out. I did not put my hands on her, as I did not want any trouble. Mrs. Ellis did not make any effort to strike me, and I did not try to take hold of her to put her out, nor did I put any of the things out. My husband, W. B. Stewart, died the 16th day of June, 1901, leaving me and five children, all minors except one. When I first went to the house, Mrs. Ellis and one of her children were there and in a short time the child left and Mr. Ellis and the children came up and all came in there. I had my little daughter with me, and of course I could not put them out. I had sent a man down, the man I rented to, over there before; so they went in without my consent or knowledge and hold the same against my will and consent." The husband of the accused testified that he slept in the house at night, and that the accused stayed there during the day, and sometimes, with him, at night. It was also shown that the property in question was, in

February, 1902, duly set apart to Mrs. Stewart and her minor chil-
dren, from the estate of her deceased husband, as a year's support.

*J. F. Golightly,* for plaintiff in error. *J. W. Culpepper, solicitor,*
*J. W. Wise,* and *A. O. Blalock,* contra.

Fish, C. J. 1. During his argument to the jury, counsel for the
State remarked: "Gentlemen of the jury, if you fail to do your
duty, it has a tendency to make people disregard the law and seek
to protect themselves." Counsel for the accused at once moved for
a mistrial on account of this language. A mistrial was refused, the
court at the time directing State's counsel to confine himself to the
law and the evidence in the case. The court also instructed the
jury that the improper remarks of counsel should not influence their
verdict, but that the verdict should be based on the law and the evi-
dence. Granting that the remarks of the State's counsel were not
within the legitimate bounds of argument, the action taken by the
court relative to the matter, in the direction given to the State's
counsel and the instructions to the jury, must have removed from
the minds of the jury any influence harmful to the accused that the
language objected to may have had. The court, therefore, did not
err in refusing to declare a mistrial.

2. The other grounds of the motion for a new trial were, that the
verdict was contrary to the law and the evidence, and to certain
specified charges of the court. As will be seen from an examina-
tion of the statement of evidence which precedes this opinion, Mr.
Stewart and, after his death, his widow, through their tenants, had
been in possession of the premises in question for some seven years
or more; and when Mrs. Stewart's tenant, Henson, moved out in
the latter part of 1904, Mrs. Ellis, the accused, soon thereafter took
possession, without the consent of Mrs. Stewart. When Henson
removed from the premises, Mrs. Stewart, his landlord, though not
in actual occupancy, was in law deemed to be in possession. Porter
*v.* Murray (Cal.), 12 Pac. 425; Walser *v.* Graham, 60 Mo. App. 323.
Mrs. Stewart on two occasions, December 30, 1904, and January 4,
1905, went to the premises and demanded possession of Mrs. Ellis,
by asking for the key of the house, which was then occupied by Mrs.
Ellis, who refused each time to surrender the possession. On the
last occasion, she declared, very emphatically and excitedly, that she
would die before she would get out of the house, accompanying the

declaration by bringing one hand down into the other. She had nailed down the windows. From the small amount of furniture in the house and the fact that while Mrs. Ellis stayed there during the day, only her husband usually occupied the house at night, the jury could infer that Mr. Ellis and family did not occupy the house as their regular home, but that the husband and wife stayed there, by turns, to prevent Mrs. Stewart from taking possession. When Mrs. Stewart first went to the house, only Mrs. Ellis and one of her children were there. In a short while this child left and Mr. Ellis and the children came up and all went into the house. From these facts it might be inferred that Mr. Ellis and the children came to assist Mrs. Ellis in keeping possession. On the first occasion there were two guns in the house, one near the front door and the other by the bed, near where Mrs. Ellis was. Mr. Ellis, who appears to have testified for the accused without objection on the part of the State, swore that one of these guns was a single-barrel shotgun, which belonged to one of his boys, and the other gun had no tubes in it and could not be used, and his wife made the same statement to the jury. Still the question arises, why, if the family had not moved to this house and were not occupying it as their regular home, were *both* of these guns carried to this house and kept there? Considering all the circumstances and the conduct and declarations of Mrs. Ellis when she refused to surrender possession of the premises to Mrs. Stewart, we can not say that the jury were not authorized to find that they were reasonably calculated to impress Mrs. Stewart with the fear that if she should attempt to take possession, she would be subjected to severe physical violence. If this were true, it would suffice to warrant a conviction. In order to make out the offense of forcible detainer, it is not necessary to prove that the accused made an actual assault upon the former possessor, to prevent him from re-entering. If, at the time the effort to re-enter is made, there be an exhibition, by words, acts, or circumstances calculated to intimidate the former possessor, and to impress on him an intention on the part of the person unlawfully detaining the premises to hold possession of them by force and violence, the offense is complete. Only a show of force is necessary. *Minor* v. *Duncan,* 54 *Ga.* 517; see also *Williams* v. *State,* 120 *Ga.* 488, and cases cited.

3. As the evidence warranted the verdict, the court did not err in refusing a new trial.

*Judgment affirmed.  All the Justices concur.*