## 9978.  FOUNTAIN v. THE STATE.

1. The court did not err either in refusing to continue the case, or in refusing to declare a mistrial.
2. "Evidence offered in a trial for murder to show the character of the deceased for violence will, as to the party making the attack, be confined to the reputation which the deceased bore in the community, and will not extend to specific acts."
(a) "Any evidence depending on the knowledge of the witness, save what he has as to the reputation of the deceased, should be excluded."
3. Grounds of a motion for new trial based upon the introduction of evidence present nothing for adjudication by this court when the evidence is not set forth therein either literally or in substance, nor attached as an exhibit to the motion.
4. "Unless in its nature manifestly prejudicial, or the assignment of error shows wherein it was harmful, the admission of irrelevant testimony will not be sufficient ground for the grant of a new trial."
5. "An assignment of error upon a ruling of the court excluding evidence, which does not set forth the evidence literally or in substance, is too indefinite to present any question for consideration."
6. Where the attorney for a defendant in a criminal case is interrupted in his argument by the trial judge, and a colloquy between court and counsel follows, in which nothing prejudicial to the cause of client or counsel is developed, the mere fact that the argument was interrupted will not require the grant of a new trial.
7. A new trial will be granted because of a statement of counsel to a jury only when the statement is "manifestly improper and prejudicial to the rights of the opposite party. If the nature of the remark is such that it can plainly be seen that it could not have affected the result, the error would be harmless, and would afford no ground for a new trial."
8. When considered in connection with the entire charge of the court no error appears in the excerpt quoted in ground 10, as to when the entire testimony of an impeached witness should be disregarded.
9. Where a judge in charging a jury incorrectly states in the first clause of a sentence a proposition as law, and immediately thererafter and in the same sentence says, "that is," and follows this by a second clause containing a correct statement of the law, the effect is to "specifically modify" the erroneous statement in the first clause and render it harmless.
10. The court did not err in charging on flight.

Decided November 23, 1918.  Rehearing denied December 13, 1918.

(Certiorari granted by the Supreme Court.)

Conviction of manslaughter; from Ben Hill superior court— Judge Crum.  July 9, 1918.

Charlie Fountain, a white man, was indicted for the murder of Crockett Gallimore, a negro, and was convicted of voluntary manslaughter.  His motion for a new trial was overruled and he excepted.  Two of the grounds of the motion were that the court

8

erred in refusing to continue the case, and in refusing to order a mistrial on account of a certain occurrence during the progress of the trial. As to these two grounds the trial judge says, in a qualifying note: "When this case was called on March 11th for trial Mr. J. H. Quincey, of counsel for movant, made the showing that Mr. John W. Bennett was leading counsel for the defendant. At his request the case was postponed until as late as Wednesday morning, March 20th, Mr. Quincey at that time knowing that he would be engaged in the regular term of Berrien county superior court, and not sure that he would be loose from that court at that time, Wednesday. On Wednesday morning, March 20th, the leading counsel, Mr. Bennett, and Mr. Rice, Mr. Quincey's partner, were present in court, as well as the defendant's father who, as the record shows, was in charge of the active preparation of the case on the facts. The court had summoned near one hundred jurors in order that this case might be tried by a jury drawn from the box. The court, knowing that [of] all men connected with the case the defendant's father was better prepared to strike the jury than any one else, ruled the case to trial in so far as the selection of a jury on that date, and postponed the taking of testimony until the following day. Mr. Quincey came into the court-room a few minutes after the selection of the jury had been completed, and had the opportunity of consultation with the witnesses, along with all the other counsel, during the remainder of the afternoon, from about four o'clock. As to the witnesses for whose absence continuance was asked, John Bennett, E. D. Murray, and Dock Armatrout were secured and were accessible to the defendant and his counsel during all of the actual trial of the case, and were not used by them. Iverson McCook was sworn. After the motion for continuance was made, neither the defendant nor his counsel ever called on the court to procure the attendance of Sam Dixon, although he lived in the city. When the motion was overruled on Wednesday, March 20th, the court furnished a special officer with an automobile to search for Charlie Baker, and the defendant's counsel were notified that they could provide any friend or relative of the defendant to go along with this special officer to make search for Charlie Baker, and they availed themselves of this privilege. After being gone all day the officer reported that they had gone to those portions of the county designated by the defend-

ant and his counsel, and that they were unable to find Charlie Baker, or to find any one who knew or had ever heard of him. When this report was made, defendant was asked if they desired any further search made, or could suggest where Baker might be found, and, there being no further suggestions as to the whereabouts of Baker, further efforts to find him were abandoned."

"Note to the second ground of the amended motion: During the trial of the case the court was privately informed by the sheriff that a man under the influence of whisky had been in the witness room, and treating the witnesses to whisky. The court privately informed the sheriff to be sure as to this, and, if he found that such was the case, to arrest the offending party and bring him into court. The witness-room referred to is in the corner of the courthouse building, adjacent to the front-entrance door to the courtroom, that entrance door being a folding door, situated about 50 feet in front of, and in full view of, the judge's stand, the upper two-fifths of each panel of the doors being of opaque glass. There is a strong light coming through this door from the outside of the building, to such an extent that the court could see through this opaque glass movements of the bodies of parties outside the door. Anticipating that the sheriff might make an arrest, the court was on the lookout for what did occur. As soon as he saw a commotion beyond the door outside of the court-room he divined what was coming, and immediately turned to the jury and addressed them direct, 'Gentlemen, go to the jury-room.' The jurors immediately arose from their seats and were making their way to the jury-room door, which was within a few feet of the jury-box, when the sheriff came through the front door with one Tom Fuller, and while he was making his way down the aisle the jurors were filing out. A few of the jurors hesitated, and the court spoke to them again and asked them to retire to the jury-room, which they did. The sheriff brought the prisoner around on the opposite side from the jury to the judge's stand and placed a bottle partly filled with what appeared to be whisky on the judge's stand. Without making any inquiry as to what had occurred, and without anything being said within the possible hearing of the jury as to the cause of the arrest, the court, addressing the sheriff, ordered the prisoner taken to jail. In this connection the court further certifies that while the name of Tom Fuller was called as a witness for

the defendant when he called his list of witnesses, Fuller did not respond, and was not brought to the bar of the court and sworn with the other witnesses, and sent to the witness-room. The court being of the opinion that nothing had occurred to prejudice the defendant, or his case, and as defendant's counsel were unable at the time to point out wherein or how his case had been in any wise prejudiced, the court declined to grant the mistrial as asked for."

*John W. Bennett, H. J. Quincey, Spencer R. Atkinson,* for plaintiff in error. *J. B. Wall, solicitor-general,* contra.

BLOODWORTH, J. (After stating the foregoing facts).

1. Some of the grounds of the motion for a new trial in this case contain much unnecessary matter. The ground as to continuance covers 34 pages. In *Gate City Gas-Light Co.* v. *Farley,* 95 *Ga.* 796 (23 S. E. 119), it is said that "Grounds of a motion for a new trial . . . which embrace utterly superfluous and unnecessary matter, such as lengthy colloquies between counsel on opposing sides, or between counsel and the court, tedious recitals of irrelevant facts, statements taken from the stenographic notes of the trial, and other like things, to such an extent as to bury the point in question under a great mass of entirely needless phraseology and thus render it very difficult, if not impracticable, for this court to ascertain what was really the ruling or other conduct of the court complained of, will not be considered." See also *Henley* v. *Brockman,* 124 *Ga.* 1059 (4) (53 S. E. 672); *City of Atlanta* v. *Sciple,* 19 *Ga. App.* 694 (92 S. E. 28). Under the facts of the instant case, as shown by the record, and under the qualifying note of the trial judge, which is copied in the foregoing statement of facts, we can not say that the ends of justice required a postponement of this case, or that the trial judge abused his discretion in refusing a continuance, or that he erred in refusing to declare a mistrial.

2. Grounds 3 and 4 of the amendment to the motion for a new trial present practically the same problem for solution, and will be considered together. A witness was called by the defendant and testified to the character for violence of the deceased, saying it was bad. On cross-examination the witness testified: "The night Gallimore was so rough I started to tell about while ago, he run when he got a chance." After the cross-examination

counsel for the defendant said to the witness, "Go ahead and tell what he did on that particular occasion at the time you said he ran;" counsel then stating that the witness would testify, "in substance, that after the dispute about the overcoat he asked him if he was not afraid to dispute a white man's word, and the negro replied by saying, 'No,' that men were all the same to him, or words to that effect, and that the negro thereupon did draw his knife on him, and attempted to cut him, and that he struck him with his pistol and knocked him down, and shot at him as he was running off." The court said, "I decline to admit that." The solicitor-general had objected to the attorney for the defendant asking the witness about specific acts or particular instances of violence. This ruling was correct. The rule is that "evidence offered in a trial for murder to show the character of the deceased for violence will, as to the party making the attack, be confined to the reputation which the deceased bore in the community, and will not extend to specific acts. . . Any evidence depending on the knowledge of the witness, save what he has as to the reputation of the deceased, should be excluded." *Powell* v. *State,* 101 *Ga.* 9 (1, *b*) 29 S. E. 309, 65 Am. St. R. 277). In *Owens* v. *State,* 120 *Ga.* 209 (47 S. E. 545), Justice Cobb said: "One's character for peace or violence is established by general reputation, and a witness will not be permitted, on direct examination, to go further than state what was the general reputation of the person in question for peace or violence. The person calling such witness will not be permitted to inquire into specific acts of violence or particular habits which might throw light upon this question. On cross-examination, however, the witness may be sifted, and inquiry may be made into the conduct of the person on different occasions or as to his different habits." In *Andrews* v *State,* 118 *Ga.* 1 (43 S. E. 852), Justice Lamar said: "The character for violence both of deceased and accused had been put in issue. The court properly refused to allow the defendant to prove specific acts of violence on the part of the deceased towards his wife. Ordinarily even the general character of the parties is inadmissible, and their conduct in other transactions is especially irrelevant. Civil Code [of 1895], § 5159 [Code of 1910, § 5745]. In a trial for murder the general character of the deceased for turbulence and violence may be shown, but specific acts are inadmissible. *Pound* v. *State,*

43 Ga. 128; Doyal v. State, 70 Ga. 147; Thornton v. State, 107 Ga. 687 [33 S. E. 673]. On the same principle the general character of a witness for truth may be shown for the purpose of impeachment, but specific acts can not be made the subject of inquiry (Civil Code, [of 1895], § 5293 [Code of 1910, § 5882]), and for the reason that every man is supposed to be able at a moment's notice to establish his general character for truthfulness or peaceableness; but the best, as well as the worst, might often be unable to explain a single transaction requiring the presence, not of any one familiar with him, but only the eye-witnesses of that special transaction, in order to justify, explain, or excuse. The general character of the deceased for turbulence or violence can be shown by his neighbors generally; the State and the accused alike are put on notice that such general character may become an issue in the trial. But no one was bound to anticipate that the specific instance inquired about would be made the subject of investigation. A specific act does not necessarily tend to establish one's general character. The single transaction may have been exceptional, unusual, and not characteristic of the deceased. Where a witness has testified that one bears the character of being peaceable, it may sometimes be proper, on cross-examination, to inquire if the witness has not heard that the man who he says was peaceable had in a particular case acted in a manner directly contrary to such reputation. Ozburn v. State, 87 Ga. 180 [13 S. E. 247]. But this line of questioning is intended solely to test the truthfulness of the witness, and not for the purpose of making an investigation of the other transactions. To allow proof of specific acts of violence would prolong the trial, multiply issues, and confuse the jury." See Thornton v. State, 107 Ga. 683 (3), 687 (33 S. E. 673), and cases cited; Doyal v. State, 70 Ga. 134 (5), 147, and cases cited. The fact that on cross-examination the witness, without objection, testified that the deceased at the time in question "ran when he got a chance" would not alter this rule and allow counsel introducing him to prove specific acts of violence. "There can be no equation of errors in the trial of a case." Stapleton v. Monroe, 111 Ga. 848 (2) (36 S. E. 428).

3. The 5th special ground of the motion for new trial alleges error as follows: "Because the following evidence on behalf of the State was admitted to the jury over the objection of movant, to-

wit: 'He (movant) walked up there and just pulled the gun and stuck it up the negro's neck, and Mr. Nasworthy called him over there and told him to come over there, that he would run off the music.' (The foregoing testimony was delivered by Marvin Wash, a witness for the State, upon the trial of said case, and referred to a transaction between movant and a party other than the deceased, at a time prior to the killing of deceased.)" The objection urged at the time of the introduction of this evidence was that it was irrelevant and inadmissible. Every ground of a motion for new trial must be complete within itself, and show error without reference to other parts of the record. When and to what place was it that movant "walked up?" It is stated that it was "prior to the killing of deceased," but how long prior? Under what circumstances did the movant pull the gun and stick it "up the negro's neck?" Standing alone, the evidence to the introduction of which complaint is made in this motion is too indefinite for this court to say that its introduction was harmful to the cause of plaintiff in error. "Grounds of a motion for new trial which are incomplete, and can not be understood without resorting to an examination of the brief of evidence, fail to present any question for decision." *Copeland* v. *Ruff,* 20 *Ga. App.* 217 (92 S. E. 955), and cases cited.

4. The 6th special ground of the motion complains of the introduction by the State of that portion of the defendant's written motion for a continuance which follows: "Defendant shows that he expects to prove by said absent witness that he, the said John Bennett, was present when the difficulty occurred between Crockett Galloway and this defendant, in which difficulty the said Crockett Galloway was killed, and defendant expects the said Bennett to swear that upon that occasion the said Galloway walked upon this defendant's feet, and when defendant remonstrated with him for so doing and asked him, the said Galloway, to desist from such conduct, the said Galloway cursed this defendant for a 'God damned white son of a bitch,' and stated that he would cut his 'God damn throat,' and actually drew his knife and attempted to cut this defendant, and that this [defendant] then and only then shot the deceased in order to save his own life." The only objection to this testimony was that it was inadmissible, irrelevant, and immaterial. Taking this evidence as it stands alone, we can not say that

its nature is manifestly prejudicial to the cause of the plaintiff in error; and no attempt is made to point out in what respect it was harmful. In *Brown* v. *State,* 119 *Ga.* 572 (46 S. E. 833), Justice Lamar said: "An assignment of error must be complete in itself. . . . If on its face manifestly prejudicial, or if the motion discloses in what way irrelevant testimony has been harmful, a new trial may be granted for its admission over objection. But mere irrelevancy is not sufficient to upset a verdict. Such evidence cumbers the record, sheds no light, gives no assistance, and prima facie is calculated to do no harm. If it does, the motion should disclose how it worked such a result." See also *Johnson* v. *State,* 128 *Ga.* 71 (2) (57 S. E. 84).

5. The 7th special ground of the motion for a new trial is as follows: "Because the court, having admitted the portion of the written motion for continuance set out and complained of in the sixth ground of this amendment, erred in refusing to admit in evidence the entire motion for continuance submitted by movant, a timely request that the whole record be admitted in evidence, if any portion of it was to be, having been submitted by counsel for movant, which request was denied by the court." The court did not err in this ruling. "An assignment of error upon a ruling of the court excluding evidence, which does not set forth the evidence literally or in substance, is too indefinite to present any question for consideration." *Danner* v. *Johns,* 147 *Ga.* 667 (95 S. E. 233); *Lewis Mfg. Co.* v. *Davis,* 147 *Ga.* 203 (93 S. E. 206); *Deal* v. *Moseley,* 147 *Ga.* 523 (5) (94 S. E. 1013); *Maxwell* v. *Rucker,* 127 *Ga.* 111 (56 S. E. 91); *Johnson* v. *Thrower,* 123 *Ga.* 706 (51 S. E. 636); *Chamblee* v. *Farmers & Merchants Bank,* 20 *Ga. App.* 527 (4) (93 S. E. 239); *City of Atlanta* v. *Sciple,* 19 *Ga. App.* 694 (92 S. E. 28), and cases cited.

6. Complaint is made in ground 8 of the motion for a new trial that the court, ex mero motu, twice interrupted counsel for the defendant in his concluding argument, and alleges several reasons why these interruptions were erroneous. While the interruptions may have been unwarranted, and were doubtless annoying to counsel, we can not say they were harmful to the cause of his client. Indeed, if the interruptions of counsel by the court, and the colloquies between them which followed, had any effect on the jury, we are inclined to think it was beneficial to the cause of the

defendant, for in both instances the judge finally admitted the correctness of the position of counsel, and each time allowed him to proceed as if no interruption had taken place. Nor can we believe that the interruptions of able and experienced counsel by the court could have so disturbed "the line of argument of counsel" that his address to the jury "may not have been as effective as . . if counsel had been permitted to pursue his line of argument without the unlawful and unwarranted interference of the court." If there are any dormant powers of eloquence in the speaker, such interruptions usually arouse them. "The lion sleeping in his lair when aroused by a wound fares forth with an angry roar, and woe to the other beasts, it matters not how powerful, that cross his path." Moreover, if the conduct of the trial judge appeared prejudicial to the cause of the defendant, a motion for mistrial should have been made. *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184) ; *Harrison* v. *State,* 20 *Ga. App.* 157 (6), 160 (92 S. E. 970), and cases cited.

7. Complaint is made of the refusal of the court to declare a mistrial because the solicitor-general in his concluding argument said, "The only thing we were able to get out of him [Marsh Wilcox] was that the negro ran." The witness Marsh Wilcox had been introduced by the defendant to show the character for violence of deceased. On cross-examination the witness testified that on a certain occasion the deceased "ran when he got a chance." In the enthusiasm of debate the solicitor-general used the language quoted above; but we do not think this error is of sufficient gravity to demand a new trial, especially as the judge, when he refused the motion to declare a mistrial, told the jury: "I will instruct the jury that they are to consider the evidence in the case as it has been delivered by the witnesses, and all other evidence as it has been admitted in the case." While the court did not in express terms instruct the jury not to consider the statement of the solicitor-general, the effect of the instructions given was to eliminate it from the consideration of the jury. Besides, a statement made by an attorney in his argument to the jury will result in a mistrial only when the cause of the opposite party would be affected thereby. Justice Cobb, in *Taylor* v. *State,* 121 *Ga.* 348 (49 S. E. 303), said: "What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice

the accused." Judge Russell, speaking for the court, in *Moore* v. *State,* 10 *Ga. App.* 805 (74 S. E. 315), said: "In our opinion, therefore, the question in every case turns upon whether the nature of the argument is such that it is manifestly improper and preju- dicial to the rights of the opposite party. If the nature of the remark is such that it can plainly be seen that it could not have affected the result, the error would be harmless, and would afford no ground for a new trial. For this reason, if the argument was directed to some collateral matter not directly affecting the guilt or innocence of the accused in a criminal trial, though the argu- ment might be improper, the error would seem to be immaterial." See *Ellis* v. *State,* 124 *Ga.* 91 (1), 93 (52 S. E. 147). In the instant case, as stated by Judge Lumpkin in *McNabb* v. *Lockhart,* 18 *Ga.* 495, 507, "The facts were rather overstated; not sufficiently so, however, to authorize a new trial on that ground."

8. When considered in connection with the entire charge, there is no error in the excerpt therefrom complained of in the 10th special ground of the motion for a new trial.

9. The judge charged the jury as follows: "If you believe that he [the accused] was justified in taking the life of Crockett Gallimore, if such you find and believe to be the truth of the case beyond a reasonable doubt from the evidence in the case, that is, if you find and believe beyond a reasonable doubt that he did take the life of Crockett Gallimore, but you believe that he was justified in so doing, then you should acquit him." After a clear, full, and fair charge covering all the issues of the case, the judge was charging on the forms of the verdict. After telling the jury under what conditions they should return a verdict of murder, or a verdict of murder with a recommendation to the mercy of the court, or a verdict of voluntary manslaughter, the judge said: "If you do not believe the defendant guilty of the offense of voluntary manslaughter, or if you entertain a reasonable doubt of his guilt of that offense, then you should acquit him." Then followed that portion of the charge quoted above and alleged to be erroneous. The first clause of the sentence in the excerpt above is erroneous, but when in the same sentence the judge immediately adds, "that is, if you find and believe beyond a reasonable doubt that he did take the life of Crockett Gallimore, but you believe that he was justified in so doing, then you should acquit him," the effect of this

last clause, which is a correct statement of the law, is to "specifically modify" the first and erroneous clause, and to render it harmless. The jury could clearly see that the judge was correcting the statement in the first clause, though he did not in express terms so state. It will also be noted that the erroneous clause is immediately preceded, as well as immediately followed, by a correct statement of the law, and under these circumstances the jury could hardly have been misled by the erroneous statement.

10. The judge charged that "Flight, if any, and similar acts, if proven, from which an inference of consciousness of guilt may be drawn, may be considered by the jury, but flight is subject to explanation; the weight to be given to it, or whether the jury will draw an inference of consciousness of guilt, or not, is for the jury. It is for the jury to determine whether the flight of the defendant, if such has been proven, was due to a sense of guilt, or to other reasons. If from other reasons, no inference hurtful to the defendant must be drawn by the jury." We find no error in the language of the judge, nor do we think it was error harmful to the defendant that the charge was given. It appears from this ground of the motion that it was contended by the State that flight had been shown, and this charge simply left the jury to determine whether or not flight had been proved, and if so, whether or not they would draw from it "an inference of consciousness of guilt;" and this charge could not have "amounted to an expression of opinion on the part of the court that the defendant had fled, when in point of fact there was no evidence to show that such was the case."

(a) The charge was not erroneous because the court did not instruct the jury what was meant by "and similar acts, if proven, from which an inference of consciousness of guilt may be drawn."

11. There was evidence to support the verdict.

*Judgment affirmed. Broyles, P. J., concurs. Stephens, J., not presiding.*