### 20530. AYERS *v.* THE STATE.

MOBLEY, Justice. 1. The evidence in this case is substantially the same as that in *Ayers* v. *State,* 214 *Ga.* 156 (103 S. E. 2d 574), in which this court affirmed the overruling of the motion for new trial on the general grounds. Accordingly, the trial court did not err in overruling the defendant's motion for new trial on the general grounds in the second trial.
2. In special grounds 1 and 2, the defendant assigns as error the admission in evidence of testimony as to certain state-

ments made by the deceased between the time he was shot and his death. Luther Mason testified that, at the time he got back in the car just after running away from the shooting, the deceased made the statement: "Get me to a doctor. Get me to a doctor. I am going to die." The other statement objected to ("I ain't going to make it. Let my folks know about it. Mr. Ayers shot me") was made to Sheriff L. P. Allen by the deceased in the presence of the witness Mason en route from the doctor's office in Buchanan to the hospital in Bremen. The testimony of Sheriff Allen upon which error is assigned is that, while on the way to the hospital in Bremen, the deceased, who was conscious, told the sheriff that he wanted to tell him how it happened. The sheriff told him to wait until they got him to the hospital, and the deceased said that "he might die and he would like to tell me. He said he was shot without cause, that Mr. Ayers shot him without cause when he started to get back in the truck." Mason testified that he was trying to crank his car when he heard three rifle shots. He immediately jumped out of the car and saw the deceased coming toward him about forty feet away. The deceased yelled that he had been shot; so Mason went to him and assisted him in getting into the automobile. Just as Mason got him in the car, the defendant began shooting; so Mason ran in front of the automobile to use it as a shield. As he did so, Talmadge Wommack slipped under the steering wheel and started driving off. As Wommack drove around a curve, Mason managed to get into the car, at which time the deceased made the statement objected to, viz.: "Get me to a doctor. Get me to a doctor. I am going to die." This statement was admissible as part of the res gestae, since it was made a few minutes after the deceased had been shot and while the defendant was shooting at the automobile. See *Thornton* v. *State*, 107 *Ga.* 683, 686 (33 S. E. 673); *O'Neal* v. *State*, 172 *Ga.* 526 (1) (158 S. E. 51); *Turner* v. *State*, 212 *Ga.* 199 (91 S. E. 2d 501). The statements made to Sheriff Allen in the presence of the witness Mason were admissible as dying declarations. The ultimate determination of whether or not a statement is a dying declaration is for the jury; whereas a prima facie case is all that is necessary to carry the declaration to the jury. *Findley* v. *State*, 125 *Ga.* 579 (1) (54 S. E. 106). "Declarations by any person in the article of death, who is conscious

of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." Code § 38-307. "There being evidence that the deceased was 'conscious that he was going to die,' that he said 'he was killed,' the attending physician having sworn that he was in the article of death, and that he did die the next morning after having been shot, the court did not err in admitting the evidence." *Swain v. State*, 149 *Ga.* 629, 630 (4) (101 S. E. 539). See also *Washington* v. *State*, 137 *Ga.* 218, 222 (73 S. E. 512). Before he testified regarding the alleged dying declaration made en route to the hospital, Mason testified that he had taken the deceased to Dr. Devore's office in Buchanan, and that Dr. Devore stated that he could do nothing for him and that he should be taken to the hospital in Bremen. It was en route to Bremen that the deceased made the statement to Allen in Mason's presence. He died four days later. "The actual period of survival after making the declaration is not controlling. The necessary element is the declarant's expectation; and the subsequent duration of life, whatever it may turn out to be, has no relation to his state of mind when he made the declaration . . . The question does not depend upon the length of time between the declaration and the death of the declarant, but upon the declarant's mind at the time of the declaration, and his belief that he is in a dying state." *Johnson* v. *State*, 169 *Ga.* 814, 823 (152 S. E. 76). See also *Miles* v. *State*, 182 *Ga.* 75 (1) (185 S. E. 286), where the declarant lived thirty-three or thirty-four days after making the declaration; *Emmett* v. *State*, 195 *Ga.* 517 (25 S. E. 2d 9), where the declarant lived three and one-half months after making the declaration; and *Davis* v. *State*, 204 *Ga.* 467 (50 S. E. 2d 604), where the declarant lived more than a week after making the declaration. Here, the deceased was in the article of death at the time he made the statement, and the wording of the declaration is sufficient to show that he was conscious that he was in the article of death. "It is not necessary for the State to show affirmatively that a person who had been shot said he was in a dying condition, in order to admit proof of his declarations, if in point of fact he was in articulo mortis, and the circumstances were such that he must have known that he was in a dying condition. . ." *Washington* v. *State*, 137 *Ga.* 218 (1), supra. See also *Campbell* v. *State*, 11 *Ga.* 353 (3). There was no error in admitting the statements objected to.

3. In special ground 3, the defendant contends that the trial court erred in admitting in evidence a .22 rifle. As held by this court when this case was previously before us (*Ayers* v. *State*, 214 *Ga.* 156, 159 (2), supra), this objection is without merit.

4. In special ground 4, the defendant assigns as error the denial of the defendant's motion for mistrial, made after the special counsel for the State read division 1 of the previous decision of this court in this case (*Ayers* v. *State*, supra)—dealing with the general grounds and the law on corpus delicti and malice—to the court in the presence of the jury, as stated by the defendant in his brief, and argued that the facts were essentially the same in the case on trial as in the case from which he read. The name of the case was not read, nor was the jury apprised of the fact that he was reading from a decision of this court on the previous trial of the case. This did not constitute a violation of that portion of Code § 24-3319, providing that "Counsel shall not be permitted, in the argument of criminal cases, to read to the jury recitals of fact or the reasoning of the court as applied thereto, in decisions by the Supreme Court or Court of Appeals." As stated in *Rome R. Co.* v. *Barnett*, 94 *Ga.* 446, 447 (2) (20 S. E. 355), "It is no cause for a new trial that counsel read reported cases to the court and commented upon them in arguing a question of law to the court, whether this was done in the hearing of the jury or not." This court having previously held that the facts established were sufficient to show malice and to prove the corpus delicti, it was not error for counsel to read that portion of the opinion to the court in the presence of the jury and for the jury to know that, if the facts were the same in the second trial as in the first, they would be authorized to find that malice was shown and that the corpus delicti had been proved. There is no merit in special ground 4.

5. The excerpt from the judge's charge on circumstantial evidence, complained of in special ground 5, is not erroneous for any reason assigned. Furthermore, the evidence in this case was direct and not circumstantial. Any error in the charge on the law of circumstantial evidence would be harmless.

6. In special ground 6, the defendant contends that the following language in the charge as to dying declarations, "I charge you further, gentlemen, that there has been admitted for your consideration in this case what the law calls a dying declaration,"

was a statement of fact by the court which invaded the province of the jury in determining whether or not a statement amounted to a dying declaration. When this introductory sentence to the charge as to dying declarations is read in context with the rest of the charge regarding dying declarations, which gives a correct definition of a dying declaration, which instructs the jury to receive evidence of a dying declaration with great caution, and which explains the reason for admitting dying declarations, it is clear that the contention of the defendant that this was a statement of fact by the court, which invaded the province of the jury in determining whether or not a statement amounted to a dying declaration, is without merit. The complete charge adequately explained to the jury that it was the jury's province to determine whether or not the statements made by the deceased constituted a dying declaration.

7. There is no merit in special ground 7, which complains that the portion of the charge excepted to is erroneous because it says in effect that, for a statement to be received as a dying declaration, the deceased must have been in a dying condition and must have known that he was in such a condition at the time of making the statement, whereas the statute says that he must have been in the article of death at the time of making the statement. In *Campbell* v. *State*, 11 *Ga.* 353, supra, this court used the terms synonymously in holding that, "In order to make dying declarations admissible in evidence, the deceased must not only be actually in extremis, but he must believe that he is in a dying condition."

8. In special ground 8, error is assigned on the following excerpt from the charge: "I charge you that if you believe this defendant killed the person named in the bill of indictment, in the manner therein charged, with an instrument [which], in the manner in which it was used, was one likely to produce death, and without any circumstances of justification or mitigation, under the instructions I have given you and shall give you in charge, and you believe such killing was done with malice aforethought, either express or implied, you would be authorized to find the defendant guilty of murder." The defendant contends that this portion of the charge eliminated the defendant's sole defense, that of accident. This court, on its previous consideration of this case (*Ayers* v. *State*, 214 *Ga.* 156, supra), found that a similar charge, which did not include

the words "or mitigation," was erroneous and that the trial court erred in overruling this ground of the motion for new trial, even though the erroneous charge was followed by a correct one in regard to the defense of accident. The charge as given did not eliminate the defense of accident, and was not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur.*

SUBMITTED JULY 13, 1959—DECIDED SEPTEMBER 11, 1959— REHEARING DENIED OCTOBER 9, 1959.

*Murphy & Murphy, Claude V. Driver,* for plaintiff in error.

*Harold L. Murphy, Howe & Murphy, Dan Winn, Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.