24753. HOLMES v. THE STATE.

*John H. Ruffin, Jr., Bobby L. Hill,* for appellant.

*Dewey Hayes, Solicitor General, Arthur K. Bolton, Attorney General, Marion O. Gordon, Courtney Wilder Stanton, Assistant Attorneys General,* for appellee.

GRICE, Justice. Leroy Holmes was indicted by the grand jury of Ware County for the murder of John Marshall Hodges, and upon trial in the superior court of that county was found guilty. On account of being under seventeen years of age he was sentenced to life imprisonment, pursuant to Georgia Laws 1963, page 122 (*Code Ann.* §§ 26-1005, 27-2302). His amended motion for new trial was denied, and his appeal is from that judgment. Enumerated as error are the denial of such motion, consisting of the general and 60 special grounds, and also permitting a witness to testify as to a statement made by the appellant.

■ We deal first with two grounds relating to jurisdiction of the trial court.

One is that the superior court should have granted appellant's motion to dismiss the indictment because the transfer of the case from the juvenile court of that county to the superior court was improper. This ground contends that the statute under which the juvenile court acted (Ga. L. 1951, pp. 291, 299, as amended; *Code Ann.* § 24-2410) violates the due process clause of the Fourteenth Amendment to the Federal Constitution.

The other ground urges that the superior court erred in denying the apppellant's motion to refer the case to the juvenile court which had jurisdiction when the superior court assumed jurisdiction.

These two grounds cannot be sustained in view of the provision of our State Constitution which vests the superior courts with exclusive jurisdiction of felony cases. Art. VI, Sec. IV,

Par. I (*Code Ann.* § 2-3901). Since the superior court thus had exclusive jurisdiction, no action was required by the juvenile court, and we need not pass upon whether the transfer procedure was improper or whether the statute under which it acted (*Code Ann.* § 24-2410, supra) is unconstitutional, even assuming that a constitutional attack was properly made.

A different result is not required by either Kent v. United States, 383 U. S. 541 (86 SC 1045, 16 LE2d 84), or In re Gault, 387 U. S. 1 (87 SC 1428, 18 LE2d 527). The Kent case dealt with procedures established by federal statutes applicable only to the juvenile court for the District of Columbia which require that court to waive its jurisdiction in order to authorize indictment and trial of a minor in another court. Our Georgia law has no such requirement. The Gault case dealt with constitutional safeguards for minors in proceedings in juvenile courts when they adjudicate acts of delinquency, which is likewise different from the situation here.

■ Two grounds involve the absence of a commitment hearing for the appellant.

■ One is that the trial court erroneously denied the appellant's motion to stay the trial because there was no preliminary commitment hearing and no effective waiver thereof, in violation of the Sixth and Fourteenth Amendments to the Federal Constitution.

This contention is not meritorious.

The holding of a commitment hearing is not a requisite to a trial for commission of a felony. Our *Code*, § 27-407, recites that it "is simply to determine whether there is sufficient reason to suspect the guilt of the accused, to require him to appear and answer before the court competent to try him; and whenever such probable cause exists, it is the duty of the court to commit."

Furthermore, the record shows waiver of a commitment hearing. At the time of such waiver the accused was represented by court-appointed counsel, who was stipulated to be "an eminently qualified criminal lawyer." That attorney testified that the accused's parents were in a state of shock from the accusation that had been made against their son, and that it was therefore

impossible for him to discuss the matter of a preliminary hearing with them or for them to be present at a preliminary hearing on the scheduled date of April 24, 1967. He therefore obtained a continuance of the hearing until April 27. He also testified that by the latter date he had already investigated the facts sufficiently and determined that nothing would be gained by such a hearing, particularly since he had been notified that arraignment was scheduled for the 28th and he intended at that time to seek a continuance of the case. It is significant that the grand jury had indicted the appellant on April 25.

For the foregoing reasons, the trial court correctly denied the motion to stay the trial.

■ The other of these grounds is that the court erred in permitting appellant's court-appointed attorney to testify concerning matters transpiring before the committing magistrate as to the waiver of the preliminary hearing. This ground urges that no transcript of this proceeding was produced and that the attorney was testifying against the appellant. This testimony, given by the court-appointed attorney when called to the witness stand by appellant's retained counsel to explain such waiver, was not inadmissible for either of these two reasons. The testimony can in no way be construed to be "against the appellant." The attorney merely explained why he first asked for a continuance of the preliminary hearing and then later waived such a hearing. The proceeding was not reported and therefore no transcript could be produced. This, however, would not prevent the attorney's testifying as to what he did on that occasion and his reasons therefor.

■ One of the grounds of the motion for new trial is that the court erred in denying appellant's motion to quash the indictment "in that the statute under which the jury selection process is carried out is unconstitutional on its face in violation of the due process of law clause of the Fourteenth Amendment to the" Federal Constitution.

This ground evidently refers to an oral motion. The first mention we find in the record of any constitutional attack on the jury selection statutes appears on page 223 of the transcript, where appellant's counsel stated: "We'd like to renew our ob-

jection, Your Honor, or our Constitutional attack to the new Georgia law regarding the selection of jurors in Georgia. I believe that section is 59-106 and 59-112. We'd like to challenge these laws as being unconstitutional on their face and in their application, in that they violate the due process clause of the Fourteenth Amendment to the United States Constitution, as we certainly would invoke a ruling of the court as to the constitutionality of both of these statutes."

Although appellant's counsel stated that he was renewing an objection, we find no previous objection or motion which complains of the jury selection law. Therefore, we must assume that the above quoted language is that referred to in this ground of the motion for new trial.

No proper constitutional attack is made by this "renewal" objection.

There is no precise designation of the statute sought to be attacked. It is identified as "the new Georgia law regarding the selection of jurors in Georgia," and as "section . . . 59-106 and 59-112," without specifying any code or statutes. If he meant sections 59-106 and 59-112 of our official code, they were superseded by a 1967 Act of the General Assembly. If he meant *Code Ann.* §§ 59-106 and 59-112, the attempted attack would be futile, as a ruling on them would not affect the Act of the General Assembly from which they were taken. *Morgan v. Todd,* 214 Ga. 497, 499 (106 SE2d 37); *Bowen v. State,* 215 Ga. 471, 472 (111 SE2d 44). Furthermore, this objection does not state wherein the statute sought to be complained of violates the Fourteenth Amendment to the Federal Constitution.

No proper constitutional attack having been made, this ground of the motion for new trial was properly denied.

■ Two grounds with reference to matters which arose in selecting the traverse jury will be treated together.

■ The first is that the court erred in not permitting appellant to strike for cause a prospective juror when he indicated on the voir dire questions that the appellant could not be given the presumption of innocence, by stating that he could not say whether the appellant was innocent or not. This position cannot be sustained. The prospective juror, in response to the question

whether he had formed any opinion as to the guilt or innocence of the appellant, answered "No"; and in response to the question whether he believed in the principle that persons charged with crimes are presumed to be innocent until proven guilty beyond a reasonable doubt, answered "Yes." The further question whether he thought the appellant was innocent was an improper one, and his answer that he would not say did not require that the appellant be allowed to strike him for cause.

The second of these grounds alleges that the court erred in denying the appellant the right to inquire whether a white prospective juror was prejudiced against Negroes. However, the record does not bear out this allegation. The question which the court refused to permit appellant's counsel to ask was whether the juror believed that "whites are superior to Negroes in intelligence." This was clearly an improper question. Therefore, this ground is not valid.

The general grounds of the motion for new trial were properly denied since the evidence supports the verdict of guilty. The salient facts on this feature follow.

The victim, John Marshall Hodges, an 86-year-old man, was making an extended visit to his daughter and son-in-law, Mr. and Mrs. C. E. Hopkins, at their home in Waycross in Ware County. On April 20, 1967, soon after breakfast Mr. Hopkins and his son left the home to go to their place of business. Later, at approximately 10 a.m. Mrs. Hopkins locked the doors and windows of the house and also left, to go shopping. She returned about noon. The front door was standing open and when she entered it she saw the body of her father lying on the floor in the hallway. She immediately ascertained that he was dead, and telephoned her husband. He notified the sheriff. They arrived at the residence within a few minutes. Shortly afterwards an agent of the Georgia Bureau of Investigation and other law enforcement officers arrived. It was found that the victim had been stabbed to death with a sharp instrument.

It was observed that the screen to a window had been cut, the window glass broken and the window unlocked. A golf club lay on the ground near the window. Entry to the house appeared to have been gained through this window. The son's bedroom

was disheveled, drawers of a chest were pulled out and items were scattered about the room.

From the investigation several persons were suspected, including the appellant, a 16-year-old Negro boy. Several months previously he had asked to do yard work at the Hopkins residence, but before completing it had abandoned the work and left the premises without informing anyone. Thereafter money was found to be missing from the son's bedroom. On the morning of the homicide the appellant was seen riding a bicycle near the Hopkins residence.

On April 24 a warrant was issued for the appellant's arrest and he was taken into custody. When he indicated a desire to discuss the homicide, he was advised of his constitutional rights. The officer in charge of the investigation then stopped the conference and reported the situation to the judge of the superior court, who immediately appointed an experienced criminal lawyer to represent him.

In the presence of this attorney the appellant again said that he wished to make a statement, and again was advised of his rights. Then he made an oral statement in which he detailed how he used a golf club to break a window, entered the Hopkins home through the window, was surprised by the victim while in a bedroom of the home, picked up a fish knife from the top of a chest in the bedroom, stabbed the victim, ran out the front door, rode away on a bicycle, and threw the knife out into a wooded area.

Later, the appellant rode with his attorney and the sheriff to the Hopkins residence and pointed out how he had broken into the house, committed the act and ridden away on the bicycle.

A palm print taken from the broken window through which appellant said he entered the house was found to match appellant's palm.

■ A ground of the motion for new trial avers that it was error to refuse to dismiss the indictment because there was a variance as to the name of the indictee. The indictment charged that "Leroy Holmes" committed the offense, while the evidence showed that the person on trial was known as "Leroy Holmes, Jr." The appellant's father, also in court and sitting with him

during the trial, was named "Leroy Holmes." This ground is not valid. The words "Junior," "Jr.," or words of similar import are mere matters of description. See Black, Law Dictionary (4th Ed.), p. 988, and citations. The person on trial was amply identified. See Division 7, infra.

■ Six of the grounds complain of identification in court of the defendant on trial as the one named in the indictment. The solicitor general in his opening remarks to the jury made this identification, and witnesses also identified the person on trial as such indictee. This is accepted and lawful procedure. These grounds are lacking in merit.

■ Appellant in two grounds insists that the court erred in not permitting him to call the jury commissioners for the purpose of cross examination, contending that the commissioners are an integral part of the jury selection process and were opposite parties in the case since they are paid by the county which is a political subdivision of the State. This contention is patently invalid. Under no view were these commissioners opposite parties in this case, nor was this a civil case, as contemplated by *Code Ann.* § 38-1801, upon which appellant apparently relies.

■ The court did not err in not directing that certain witnesses for the State answer questions asked by appellant. In each instance it appeared that the witness had answered as well as he could. The transcript shows that the appellant was not denied the right to a thorough and sifting cross examination, and hence the three grounds in question are not well taken.

■ One of the jury commissioners was not, as contended by appellant in his motion, permitted to testify as to an ultimate fact. The testimony objected to was: "Q. You tried to select intelligent and upright citizens? A. That's right. Q. And did you do that? A. To the best of my knowledge we did." This testimony thus related to the standard sought to be attained by the commissioners in compiling the jury list.

■ Ground 8 charges that "The court erred in permitting the solicitor general to lead a witness when it was perfectly clear and obvious that the witness was hostile to the defendant's interest." The record shows that appellant's attorney objected a number of times that the solicitor general was leading a witness.

■

From what is stated it is impossible to ascertain which witness and which instance is complained of. Therefore, a ruling on this ground cannot be made.

■ One ground of the motion recites that the court erred in denying a motion to inspect, in violation of the appellant's rights under specified provisions of the Federal Constitution. The State was not required to show to appellant's counsel any statements reduced to writing or tangible evidence which it planned to introduce in evidence. *Williams v. State,* 222 Ga. 208, 212 (149 SE2d 449). This ground is not meritorious.

■ Six grounds complain as to certain photographs. These were authenticated by the photographer who made them and were stated by other witnesses to represent accurately their subject matter. Hence, there was no error in admitting them in evidence, or permitting testimony relating thereto, as urged by the appellant.

■ It was not error to permit a State's witness to testify that the Hopkins home was located in Ware County, Georgia. This was not a mere conclusion, as urged by the appellant.

■ Four grounds of the motion for new trial and one of the enumerations of error involve testimony of the sheriff.

■ Three of these grounds and the enumeration relate to testimony of the sheriff regarding statements made by the appellant. The appellant argues that the court erred in admitting such testimony because a proper foundation had not been laid as required by Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 974). The evidence is undisputed that the procedural safeguards required by the Miranda case were provided this appellant. An investigating officer and the appellant's court appointed attorney advised him of his constitutional rights, as held by the Miranda case, before he made any statement as to his criminal act. The trial judge conducted a hearing outside the presence of the jury, and after considering testimony as to the facts and circumstances relating to the statements, found they were freely and voluntarily made. This finding was authorized by such evidence.

■ One of the grounds of the motion pertains to testimony of the sheriff concerning a golf club. It urges that the court

erred in admitting such testimony as the club had not been admitted in evidence, no proper foundation had been laid, and it had no probative value relative to the appellant's guilt or innocence. This testimony was not subject to these criticisms. As held in the preceding division, the proper foundation had been laid for the statement made by appellant, in which he told, among other matters, of using the club to break the window glass and gain entry into the Hopkins home.

■ In ten grounds of his motion for new trial appellant complains of the conduct of the solicitor general.

■ Four grounds involve denials of his motions for mistrial because of remarks by the solicitor general made in colloquy during the introduction of evidence. We have examined each of these and find none which requires grant of mistrial.

■ Another ground relates to the court's refusal to direct the solicitor general to address his remarks to the court instead of to counsel for the defense. No cause for reversal appears here.

■ Four grounds urge that the court erred in overruling appellant's objections to what he considered attempts by the solicitor general to confuse and entrap appellant's witnesses and to ask irrelevant questions. We have examined these and find that they are without merit.

■ The remaining ground is that the court should have directed the solicitor general to refer to a defense witness by a stated title. This is patently not valid.

■ Appellant in three of his grounds insists that the court erred in permitting the State to recall named witnesses for further testimony. This is a matter within the discretion of the trial judge, and no abuse of discretion is shown.

■ Three of the grounds complain of the trial judge's conduct. One avers that he erred in not granting appellant's motion to disqualify himself because of his "emotional outburst" during the hearing on a preliminary motion. Another ground alleges that he erred in not disqualifying himself because he showed by his conduct of the trial that he "could not sit in judgment of the issues impartially." A careful study of the record shows that these charges are utterly without factual basis. The record

shows that the trial judge exercised remarkable restraint and self-discipline. Furthermore, there is no authority, statutory or otherwise, which requires a trial judge to disqualify himself for the reasons ascribed here.

The third ground is that the court erred in replying to a question which a State's witness asked the court while on cross examination and that the court's answer was prejudicial to the defense. The transcript discloses that the witness requested and received instruction from the court, and that such instruction was not prejudicial to the appellant. This ground is not meritorious.

■ In two of the grounds appellant urges that the court erred in denying all previous motions renewed by him. These grounds are too vague and indefinite to be considered. The motions are not identified in any way; neither their subject matter nor location in the record is specified. No doubt many of them are controlled by the rulings made in the other divisions of this opinion.

■ The court properly denied appellant's motion for a directed verdict of acquittal. This ground cannot be sustained since, as we have already ruled, the general grounds of the motion are not meritorious.

■ Five of the grounds complain of the court's charge to the jury. The extracts complained of are those which follow.

"I charge you, ladies and gentlemen, that where the State proves that the accused killed the deceased in the county and in the manner described in the indictment, a prima facie case of murder is made out, and the burden is on the accused to set up a defense."

"Where the killing is proved to be the act of the defendant the presumption with which he enters the trial is removed from him, and the burden is then upon him to justify or mitigate the homicide."

"Where a killing is proven the law presumes that every person intends the natural consequences of his act."

"If the instrument, used in the manner in which it was used on the occasion, was a weapon likely to produce death, and from the use of such weapon in such manner death ensued, the law,

from the use of such weapon in such manner implies malice and the intent to kill."

"Now, the defendant being under the age of seventeen years, in the event you find the defendant guilty as charged, would be punished by imprisonment in the penitentiary for life."

Appellant has not attempted to show how or wherein the foregoing extracts from the charge are incorrect. The first four are well established principles of law which have been given in charge to juries for many years with this court's approval. The last comports with a recent Act of the General Assembly (Ga. L. 1963, p. 122, supra), and is applicable to punishment for capital offenses of persons under 17 years of age such as the appellant. None of these grounds is valid.

■ Appellant contends in five grounds as to irregularities with reference to the jury. These were first made in a motion for mistrial after the jury had returned its verdict and the verdict had been published. The motion for new trial did not provide any supporting affidavits. These grounds are not meritorious.

■ As to the contention that the jury did not report to the courtroom at 9 a.m. on November 4, 1967, after having been kept together overnight, the trial judge, in denying the motion for new trial, certified that the jury had not requested additional instructions and there was no reason for the jury to have reported to the courtroom.

■ The basis of another ground is that "the jury was not kept together during its deliberation because defendant's counsel saw a juror leave the jury room during the course of deliberation." As to this the trial judge certified that the bailiffs and jurors were instructed with reference to the jury remaining together during their deliberations, and that, "It is the understanding of the court that one juror, during the deliberation, went to the water fount, which is located not more than three feet from the door to the jury room; that he did not speak to anyone and no one spoke to him; that he drank from the water fount and immediately returned to the jury room. The court did not have any knowledge of this until after the verdict was published and judgment was pronounced in open court." With reference to another ground (see Division 22 (d), infra), the

judge certified that "bailiffs were on duty during the deliberations and were stationed immediately outside the door to the jury room." Therefore, the juror could not have been more than three feet away from a bailiff when he went to the water fount.

Appellant also urges that he was not given an opportunity to submit names of persons for bailiff duty so as to assure that there would be no unauthorized and prejudicial communication with the jury. This ground is patently invalid. The sheriff and the trial judge, not defense counsel, have the responsibility for selection and appointment of bailiffs to take in charge the jury during its deliberations. Superior Court Rule 79; *Code Ann.* § 24-3379.

The appellant also insists that persons were permitted to congregate around the door to the jury room during the jury's deliberations, one such person being a named State's witness. In this connection the trial judge certified that the door to the jury room opens into the hallway of the courthouse, that people did pass along that hallway while the jury was deliberating, but that bailiffs were on duty during the deliberations and were stationed immediately outside the door to the jury room. He further certified that no one communicated with the jury or any member of it during the deliberations.

The appellant's motion complains that the sheriff, a chief witness for the State, was permitted to direct the bailiffs in the jury's presence and to receive the jury's verdict. As to this the trial judge certified that the sheriff was sworn in as a bailiff but was not in charge of the jury; that after the jury reached its verdict and returned to the jury box its foreman handed the indictment with the verdict written thereon to the sheriff; that immediately and without looking at the verdict the sheriff handed the indictment to the clerk; that at the instruction of the court, the clerk published the verdict in open court.

One ground alleges that the court erred in not permitting appellant's counsel to poll the jury after it had returned its verdict. However, the transcript shows that the jury was polled by the court. That this was done by the court, instead of by counsel, constitutes no error.

The final ground of appellant's motion for new trial complains of the sentencing of one of his retained counsel, John H. Ruffin, Jr., to jail for contempt of court after the verdict and judgment had been announced. It is not necessary to consider this ground because the contempt proceeding is separate from this appeal, which involves only the trial of the appellant Leroy Holmes.

We find that no error was committed in the trial of this case, and accordingly the judgment is

*Affirmed. All the Justices concur.*

ARGUED JULY 8, 1968—DECIDED SEPTEMBER 23, 1968.