### 48573. BENTLEY v. THE STATE.

CLARK, Judge.

Defendant's appeal is from conviction on two counts of aggravated assault charging him with shooting a pistol at others. The first count was based on wounding a child and the second charged him with shooting at two other persons.

The incident occurred after defendant's son had

been robbed by some youngsters in the neighborhood. After the police had been unable to apprehend any suspects, accused and his son went to the area looking for the culprits. When the son saw and identified two boys in the yard of a residence belonging to a Mrs. Myricks, defendant descended from his car and accosted them. There is a conflict as to subsequent events. Defendant's contention was that he demanded a return of the stolen property and his son's watch was surrendered. Then, at that point in time,[1] two shots were fired from an unknown source, so he returned to his automobile, obtained a pistol and fired three shots into the ground but at no person and then departed.

The state's witnesses testified that the defendant's statement to the boys was inaudible, and was followed by defendant shooting at the boys as they scurried away along with the little girl who was the only one hit by the bullets and thereafter defendant left the scene.

There are fifteen enumerations of error including five devoted to the general grounds that the verdict and judgment is contrary to the law and not supported by the evidence.

1. "Attention is . . . called to the rule that in every case where a verdict has been rendered by a jury and has received the approval of the trial court, the evidence given in support thereof must be construed most strongly toward the prevailing party in the trial court, that is, most strongly in favor of supporting the verdict. It must be construed 'in its most favorable light to the prevailing party . . . for every presumption and inference is in favor of the verdict.' [Cits.]" *Ryder v. State,* 121 Ga. App. 796, 798 (175 SE2d 882).

2. "A person commits aggravated assault when he assaults . . . (b) with a deadly weapon." Code Ann. § 26-1302. Assault is defined as "when he either (a) attempts to commit a violent injury to the person of

---

[1] A phrase which was used so frequently by witnesses in the recent Watergate Congressional hearing that it has become commonplace usage: "at that point in time."

another or (b) commits an act which places another in reasonable apprehension of immediately receiving a violent injury." Code Ann. § 26-1301. "The offense of shooting at another 'is a form of aggravated assault.' *Copeland v. Dunehoo,* 36 Ga. App. 817, 822 (138 SE 267)." *Hart v. State,* 55 Ga. App. 85 (2) (189 SE 547).

3. Witnesses for the defendant testified as to his having a pistol in his hand and firing three shots but not at any person, only into the ground. The conflicting versions of the testimony between the defense and state witnesses concerning the direction in which defendant had pointed his pistol and the number of shots fired by defendant as well as the other evidentiary conflicts were resolved by the jury in favor of the state. "In the instant case, 'the conflicts in the evidence were questions for the trior of fact and not one of law for this court.' *Hopkins v. Sicro,* 107 Ga. App. 691, 693 (131 SE2d 243)." *Stewart v. State,* 128 Ga. App. 11, 13 (195 SE2d 251). This case comes "under the general rule that when evidence is contradictory the jury may believe the evidence which they think is most entitled to belief. *Ford v. State,* 92 Ga. 459, 461 (17 SE 667)." *Mitchem v. State,* 53 Ga. App. 280, 281 (185 SE 367).

4. Under the general grounds defendant argues that contradictions on material facts as between the various state witnesses warrant reversal. We have examined the specific contradictions and find they are not such as to constitute error.

"Rare it is that the most truthful can after a lapse of months, repeat the material details of an event with complete accuracy." *Georgia R. &c. Co. v. Flint,* 93 Ga. App. 514, 527 (92 SE2d 330). The alleged inconsistencies go to credibility. "The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." Code § 38-1805. The trial judge here charged the jury on the principle of credibility of witnesses in such a manner that they were sufficiently instructed as to how they were to weigh alleged contradictions in testimony.

5. "After a verdict, approved by the trial court, the evidence must be construed by this court in its light most favorable to the prevailing party with every presumption

and inference being in favor of upholding that verdict. [Cits.]" *Green v. State,* 123 Ga. App. 286, 287 (180 SE2d 564). The evidence supports the verdict on both grounds of aggravated assault and the five enumerations of error on general grounds contending the verdict to be unsupported by the facts or the law are without merit.

6. Objection was made to a statement by the district attorney in his closing argument that ". . . Mrs. Myricks came in here today and brought me some bullets and things, she not knowing about chain of evidence." Indeed, the argument was improper. There were only two pieces of physical evidence in the case. One was a spent bullet which, although fully and properly identified, was not offered in evidence by the district attorney. The other physical evidence was two shell casings the tender of which was withdrawn by the district attorney. However, although the argument was erroneous and the trial judge erred in not taking corrective action, the error was harmless as the transcript is replete with positive uncontradicted testimony admitted without objection to the effect that the defendant fired a gun and that spent bullets and shell casings were found. *Fountain v. State,* 23 Ga. App. 113 (7) (98 SE 178).

7. The next two enumerations of error (numbers 8 and 9) contend the court erred "In admitting testimony in the district attorney's argument not given during the trial" and "in allowing the admission of the district attorney's personal feeling and testimony."

" 'It has been held by this court many times that, when improper argument is made to the jury by an attorney for one of the parties, it is necessary, in order to make the same a basis for review, that opposing counsel make proper objection to it at the time made or invoke some ruling or instruction from the court respecting it, either by way of reprimanding counsel, or of instructing the jury to disregard it, or of declaring a mistrial. A party can not during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. [Cits.]' " *Joyner v. State,* 208 Ga. 435, 438 (67 SE2d 221). (Also subsequently quoted with approval in *Johnson v. State,* 226 Ga. 511, 514 (5) (175 SE2d 840) and *Daniels v. State,* 230 Ga. 126, 127 (195

SE2d 900)). As defendant did not follow the above requisites and màde no objections of any type iǹ regard to enumerations numbers 8 and 9, they cannot be considered by this court on appeal. *Kingston v. State,* 127 Ga. App. 660, 662 (4) (194 SE2d 675).

8. Appellant's next assignment contends the court erred in denying defendant's motion for mistrial made upon the mother of the wounded child being permitted to testify that the child said "Mama that man shot me." The motion was based upon this answer constituting hearsay. The court ruled the statement was a part of the res gestae. The mother's testimony indicated the child's statement was made immediately after she fell through the door, that she was still on the floor in the doorway, and that the defendant was in the yard with the gun pointed at the house, and still pulling the trigger, although there were no more shots.

"Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of res gestae." Code § 38-305. *McBride v. State,* 119 Ga. App. 418, 420 (167 SE2d 374) quotes from Green, Georgia Law of Evidence, p. 591, § 293, "that an opinion or conclusion is admissible, if 'spontaneous or reflective rather than a reasoned one arrived at deliberately after thoughtful consideration.' "

"At the time the deceased was shot, and immediately after the witness heard the gunshot, he testified that the deceased cried out 'Junior, they done shot me.' These remarks, made by the deceased at the time of the shooting, would be a part of the res gestae and so connected with the alleged crime as to be admissible evidence as a part thereof. [Cits.]" *McKinney v. State,* 121 Ga. App. 815 (2) (175 SE2d 893). See also *Ayers v. State,* 215 Ga. 325, 326 (110 SE2d 669), where the statement was held admissible as part of the res gestae, since it was made a few minutes after the deceased had been shot and while the defendant was shooting at the automobile to which deceased had been taken by a witness.

"The testimony of the witness that she saw the deceased and the defendant pushing each other and had gone back in her room and in about two minutes the

deceased knocked on her door and, when she opened it, stated that the defendant 'stabbed me out there a while ago,' was admissible as part of the res gestae. [Cits.]" *Gates v. State,* 120 Ga. App. 518 (2) (171 SE2d 375).

*Mitchell v. State,* 71 Ga. 128, is cited by defendant but it actually supports the state's position: "Where a witness reached the scene of a conflict in a very few minutes after the deceased fell, and assisted in bearing him away, and when they had gone about thirty or forty steps the wounded man asked the witness, 'What did you shoot me for?'—the whole transaction not occupying more than five minutes— such facts were a part of res gestae."

Defendant relies on one statement made on cross examination by a state's witness who was inside the house during the incident which indicated that the child's statement may have been made five minutes after the first round of shots. It should be noted that the same witness on direct examination estimated the lapse of time to be two minutes. As the child's statement was made in the physical presence of the defendant and as it was made immediately upon the mother's first contact with the child after the incident, the statement bears the earmarks of being spontaneous and not an afterthought. Furthermore at the time of the statement, the incident was still occurring, as defendant had the gun pointed at the door and according to the mother was still attempting to fire the gun.

The statement was admissible as part of the res gestae and the trial court's denial of a mistrial was correct.

9. Defendant's eleventh assignment of error argues the court had no evidence on which to warrant a charge of "transferred intent," contending the testimony did not show defendant to have pointed his gun at the girl who was wounded and there was nothing to show intention to do her harm. The portion objected to was: "I charge you that the law of this state provides that the law as well as reason prevents a person from taking advantage of his own wrong or excusing himself when the unlawful act strikes down an unintended victim. In legal contemplation the intent follows the act through to its

legitimate result and the original malice is transferred from the one against whom it was entertained to him who actually suffered the consequences of the felonious act." (T. 372).

This language is from *Chelsey v. State,* 121 Ga. 340, 343 (49 SE 258), an opinion written by the eminent Joseph R. Lamar.[2] The position of this instruction in the court's charge was after the judge had defined a crime (Code Ann. § 26-601), criminal negligence, and those three Code sections captioned "Acts presumed to be wilful" (§ 26-603), "Consequences presumed intended" (§ 26-604), and "Intention a question of fact" (§ 26-605). (T. 371-2). The sequence was proper and was warranted by the evidence. Even though the defendant may not have intended to harm the little girl his use of the firearm was directed towards the group of fleeing children made up of the two youths and the little girl. It was well said in appellee's brief at page 14 that transferred intent "sets forth the principle that one who shoots B cannot escape liability by showing he intended to shoot A." There is no merit in this enumeration.

10. Likewise we find no merit in the twelfth enumeration of error which states "The Court erred in charging aggravated assault in connection with count 1 of the indictment." This count involved the little girl. Appellant asserts that the offense involving the child should have been battery, a misdemeanor. Appellant's counsel cites no authority in support of such theory. The state's evidence was sufficient for the charge to include the offense of aggravated assault as to the wounded child.

11. The thirteenth assignment of error asserts the court erred in requiring defense counsel "to proceed with the defense after the State had made known to the trial judge that it would put in additional evidence."

The transcript shows the state had completed its

---

[2] An Augustan who served on the U. S. Supreme Court from 1911 to 1916, he being the second Georgian to occupy such position. The first was James Moore Wayne from Savannah who was on that Bench for 32 years from 1835 to 1867.

direct presentation with the exception of using the doctor who had treated the wounded child. The absence of the physician was explained as having been due to his being on special duty with a "terminally ill patient." Defense attorney requested that the case be recessed until the doctor had completed his testimony, the contention being made that the doctor's evidence "may very well change the whole defense." (T. 166). The court then made inquiry in the absence of the jury of counsel for defense and prosecution during which it was learned that the doctor would not be available until the following day. Further discussion ensued at the bar during which the prosecution stated the line of questioning which would be followed with the doctor and his anticipated testimony. The colloquy between court and defense counsel continued with the court finally ruling that the defense had to proceed. In doing so the judge emphasized that "The district attorney stated to you just exactly what he intended to ask the doctor and what the doctor would testify. And I am going to hold him to that testimony. I am going to hold him to those questions. I am not going to permit him to go any further than that. So you are on notice as to what he intends to question the doctor and what he expects the doctor to testify." (T. 171).

The situation which developed here comes within the principle that "The trial court has a wide discretion in permitting the state to introduce additional evidence after it has closed its case." *King v. State,* 230 Ga. 581, 582 (3) (198 SE2d 305). As was said in *Johnson v. State,* 226 Ga. 511, 513 (3) (175 SE2d 840) "The trial judge has a wide discretion in the handling of the trial, and it was not error to permit the State to reopen its case. *Mobley v. State,* 221 Ga. 716 (4) (146 SE2d 735). This court in *Bigelow v. Young,* 30 Ga. 121 (3), held: 'It is within the discretionary power of the court to allow a witness to be sworn, after the evidence on both sides has been announced closed, and the argument has been com-menced; and a liberal practice in this respect is most fa-vorable to the ends of justice.' In *Burden v. State,* 182 Ga. 533, 534 (186 SE 555), it was held that it was not error for the court to reopen the case and allow the State to introduce additional evidence even though the evidence

was not in rebuttal." See also *Miller v. State,* 226 Ga. 730 (3) (177 SE2d 253) and citations therein; *Anderson v. State,* 120 Ga. App. 147 (5) (169 SE2d 629); *Davis v. State,* 127 Ga. App. 76 (3) (192 SE2d 538).

The trial judge here took ample precaution to insure defendant of a fair trial by his limitation upon the doctor's testimony and thereby enabling defense counsel to deal with the anticipated medical testimony. There was no abuse of discretion.

12. The next assignment of error complains that "The court erred in failing to charge the provisions of the Georgia law as codified in Code of Georgia Annotated § 38-1806." (Enumeration No. 14). There was no written request for a charge on this section which deals with impeachment of witnesses.

In the most recent case on this subject, *Tanner v. State,* 228 Ga. 829, 833 (8) (188 SE2d 512) our Supreme Court ruled that such failure to charge in the absence of a written request is not such a substantial error as to be harmful as a matter of law. The court quoted with approval from *Benton v. State,* 185 Ga. 254, 257 (194 SE 166) and *Bonaparte v. State,* 223 Ga. 648 (2) (157 SE2d 272) that "While it is true that the credibility of witnesses is a matter to be determined by the jury under appropriate instructions from the judge (Code § 38-1805), yet it has been held numerous times that failure to so instruct the jury is not cause for the grant of a new trial, in the absence of an appropriate and timely request so to charge."

Furthermore, it should be noted that the court below charged the principles of law relating to credibility of witnesses generally. Under those circumstances the failure to include Code § 38-1806 relating to impeachment of witnesses in the charge in the absence of written request is not error says *McDonald v. State,* 89 Ga. App. 759 (2) (81 SE2d 303). There our court quotes with approval from *Douberly v. State,* 184 Ga. 573 (5) (192 SE 223) that "Impeachment of witnesses is a collateral matter, and omission to charge the law on that subject is not cause for reversal where an appropriate request was not made for instruction on that subject. [Cits.]"

The case of *Martin v. State,* 96 Ga. App. 557 (100

SE2d 645), relied upon by appellant, should be distinguished from the case at bar in that here we have no admission by any witness of false swearing and because the contradictions complained of dealt with collateral elements such as the number of shots fired and similar minor inconsistencies. See also *Eberhart v. State,* 121 Ga. App. 663 (175 SE2d 73).

13. The final enumeration is based upon a ruling by the trial court which denied appellant the right to call one of the two youths for the purpose of cross examination. The state had used only one of the youths as a witness. Defendant argues that Code Ann. § 38-1801 permits him to call a prosecution witness for cross examination as an agent of the state or as a party for whom the suit is being prosecuted. This proposition is without basis. In *Holmes v. State,* 224 Ga. 553 (163 SE2d 803) it was ruled that a jury commissioner could not be called as an agent of the state even though such commissioners are an integral part of the jury selection process and are paid by the county which is a political subdivision of the state. A witness cannot be considered to be an agent of the state even when interested in the prosecution.

Additionally, no harm resulted to defendant by the court's ruling because the state thereafter used the youth as a rebuttal witness when he was then subjected to a rigorous cross examination. "Injury as well as error must be shown before a new trial will be granted." *Goodwyne v. State,* 38 Ga. App. 183, 184 (8) (143 SE 443).

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, P. J., Pannell, Deen, Quillian and Stolz, JJ., concur. Evans, J., dissents.*

SUBMITTED SEPTEMBER 17, 1973 — DECIDED MARCH 7, 1974 — REHEARING DENIED MARCH 29, 1974 —

*Gilbert, Wilkerson & Hill, Fred A. Gilbert,* for appellant.

*Lewis R. Slaton, District Attorney, Morris H. Rosenberg, Robert A. Weathers, Carter Goode,* for appellee.

Evans, Judge, dissenting.

Enumeration of error number six complains because the district attorney was allowed to argue matters not in evidence, over objections by defendant's counsel, and as to which the trial court took no proper corrective action. The majority opinion states: "We are of the opinion that this statement by the judge to the jury met the requirements stated in *Purcell v. Hill,* 220 Ga. 663, 664." I do not find in the record that any corrective action whatever was taken by the trial judge. The district attorney, without any evidence as a basis therefor, improperly argued to the jury: "Now these people, Mrs. Myricks, came in today and brought me some bullets and things, she not knowing about chain of evidence." Instead of taking corrective action, the trial judge *sanctioned* the improper argument, and told the jury that "counsel has a right to argue the evidence, any reasonable deductions and inferences to be drawn therefrom. But in the long run ultimately the jury will have to rely on its own recollection as to what the evidence was." We repeat, instead of correcting state's counsel, the trial judge sanctioned his improper conduct. This action cannot be equated with the action taken by the trial judge in the *Purcell* case, supra, cited and relied on by the majority opinion, for in the *Purcell* case the trial judge stated: "I rule that out; just don't pay any attention to that." Surely, the majority cannot seriously contend the action in the *Purcell* case, and in the present case, are on all-fours! There was, in effect, a *reprimand* in the *Purcell* case, whereas there was tacit *agreement* with the improper argument in the present case.

But the law of Georgia requires *two corrective actions* by the trial judge where improper argument is made as to matters not in evidence. First, on objection, he shall rebuke counsel, *and,* then by all needful and proper instructions to the jury endeavor to remove the improper impressions from their minds. See Code § 81-1009. It is important to emphasize that less than both corrective actions will not satisfy the statute; counsel shall be rebuked, *and in addition,* the judge shall instruct the jury in such fashion as to endeavor to remove the

improper impression from their minds. Here the trial judge did neither the one nor the other.

I am at a loss to understand how the majority can contend that in this case the trial judge took action similar to that in the *Purcell* case, and I insist that the record shows to the contrary. The judges of this court are all former practicing attorneys, and each is bound to recognize exactly what the district attorney was doing, that is, he was "testifying" as to matters not in evidence, using the vehicle of his oral argument for the purpose of introducing such evidence. That practice is to be condemned and the trial judges should very strictly enforce the law as to improper argument. I therefore respectfully dissent.

### First Addendum to Dissent.

Evans, Judge.

Following the foregoing dissent, the majority has withdrawn three pages and has inserted eight additional pages, and I am compelled to reply.

The majority, in its second write-up of this case, argues that the statement by the trial judge was sufficient as a reprimand to counsel for the state for improperly bringing in new evidence by way of argument, with no evidence to support such argument. Let us look at the trial court's statement and see if it helped defendant one iota. It is as follows, to wit: "The Court: 'It's not proper for the Court to comment on what the evidence is. The jury will have to rely on its own recollection as to what the witnesses said. The court cannot comment on that. Counsel has a right to argue the evidence, any reasonable deductions and inferences to be drawn from the evidence. But in the long run ultimately the jury will have to rely on its own recollection as to what the evidence was.'"(Tr. 354). This was a reprimand to state's counsel? Far from it! The trial court did not go nearly far enough in instructing the jury that state's counsel "has a right to argue the evidence" and "reasonable deductions and inferences to be drawn from the evidence. But in the long run ultimately the jury will have to rely on its own recollection as to what the evidence was." The trial court was in gross error in

stating that he could not comment on the evidence, where there is a complete lack of evidence. In other words, he contended that so long as state's counsel *contended* he was arguing within the evidence — no matter how far outside he was — the judge was powerless to stop him, except to tell the jury they must remember what the evidence was. Of course, ordinarily the trial court cannot comment on the evidence, *but he can certainly stop counsel from making an improper argument based upon a matter as to which no evidence has been introduced —* as was the case here!

If the trial judge and the majority opinion are correct, then how can the following statute ever be enforced, to wit: "Where counsel in the hearing of the jury make statements of prejudicial matters *which are not in evidence . . .*" (Emphasis supplied.) Code § 81-1009. Here the trial court said he was powerless because he could not comment on the evidence, much less reprimand counsel, because of any contentions as to what was in evidence.

In *Georgia Power Co. v. Puckett,* 181 Ga. 386 (2) (189 SE 384), it is held: ". . . It is not permissible by way of argument to introduce new matter as evidence for consideration of the jury." But how can the trial judge prevent improper argument if he is handcuffed and hog-tied as the trial judge here suggests, with the apparent sanction of the majority opinion in this court.

But the trial court and the majority opinion overlooks the very important matter that state's counsel *had voluntarily withdrawn the evidence as to which improper argument was made.*

The majority opinion originally admitted in this language: "Thereafter the state voluntarily withdrew these two items with the statement that there had not been a proper chain of custody."

Who could have known better than state's counsel that he had withdrawn that evidence before he made his improper argument and sought to re-introduce it by way of argument? Who knew better than the trial court — who presided and necessarily kept up with the progress of the case — that this evidence had been withdrawn, and that counsel's effort to re-introduce it by way of argument

should have been met with prompt and strong reprimand? But the trial court mildly said, in response to defendant's prompt objection: "It's not proper for the court to comment on what the evidence is . . . Counsel has a right to argue the evidence and any reasonable deductions and inferences to be drawn from the evidence." But the majority opinion states that the trial court's statement to jury, "met the requirements stated in *Purcell v. Hill,* 220 Ga. 663, 664." *We challenge that statement!* If the majority is correct about that, we are willing to concede our position in this dissent is unfounded. What did the judge say to the jury in the *Purcell* case, supra? "I rule that out, just don't pay any attention to it." But in the present case, the judge said he had no right to comment on the evidence; that state's counsel had the right to argue the evidence and reasonable deductions therefrom, and that the jury would have the duty of remembering what was the evidence. *No reprimand — no suggestion that state's counsel had done anything that was improper — and a tacit sanction of all the district attorney had said!*

The majority opinion argues that if defendant wished *further* corrective action, a request of the court should have been made of the court for such, using this language: "In short there was no request for additional corrective action." *Additional corrective action, indeed!* There had been *no corrective action* by the court whatever; defendant's counsel had requested corrective action and ran into a stone wall. He could not request *additional* corrective action until first there had been *some* corrective action. His first request was refused. He had no duty whatever of asking for more, as Oliver Twist did when the gruel was not enough to satisfy the pangs of hunger, and for which request Oliver was severely punished (from Charles Dickens' "Oliver Twist").

SECOND ADDENDUM TO DISSENT.

EVANS, Judge.

This case is taking numerous twists and turns. First, the majority opinion was written and the writer dissented. Then, the majority opinion was re-written, three pages being withdrawn, and eight new pages being

substituted. The writer was required to add "Addendum to Dissent" in answer to the second write-up of the majority opinion. Now, the majority opinion has been changed a third time, five pages have been withdrawn, and five new pages substituted, which necessitates this "Second Addendum to Dissent."

The third write-up eliminates the principal case on which it had previously relied, to wit, *Purcell v. Hill,* 220 Ga. 663, 664. The majority opinion had stoutly maintained "That the trial court's statement to the jury, met the requirements stated in *Purcell v. Hill,* 220 Ga. 663, 664."

In our first "Addendum to Dissent" the writer stated: *"We challenge that statement!* If the majority is correct about that, we are willing to concede our position is unfounded." Instead of accepting our challenge, the majority opinion withdraws *Purcell v. Hill,* tacitly admitting that it was wrong, and that the challenge made in our dissent was correct. But the majority opinion still maintains that it is right about the *results of the case,* even though it had cited as its principal authority a case that did not support its position, and which it found necessary to withdraw.

The majority opinion in its third write-up of this case seeks to perpetuate the error into which it has fallen by insisting that defendant was not entitled to relief from the improper argument because ". . . defense counsel did not move for a mistrial nor make any request for rebuke of the district attorney. In short, there was no request for additional corrective action."

Defense counsel was not required to move for mistrial or make a request for rebuke of state's counsel. It is only when the trial judge has ruled partly *in favor of the objection, and has granted some of the relief requested,* that a duty devolves upon the objector to ask for further corrective action, including a mistrial, if he thinks the partly favorable ruling does not go far enough. The explicit language of the statute, to wit, Code § 81-1009, provides that when objection to the improper argument is made, the trial judge is called upon to do two things, to wit: (1) rebuke counsel, and (2) instruct the jury so as to remove the improper impression from their

minds, or (3) in his discretion, order a mistrial.

The transcript at p. 354 shows that immediately upon the improper argument being made, defendant's counsel objected to same in the following language, to wit: "Your Honor, we object to this argument. That is improper to talk about what Mrs. Myricks came in here today and did. Those things are ruled out. And they have been ruled out and its improper to argue about them now."

The trial court ruled absolutely, positively and conclusively against defendant, *and did not grant even partial relief,* using this language: "It's not proper for the court to comment on what the evidence is. The jury will have to rely on its own recollections as to what the witnesses said. The court cannot comment on that. *Counsel has a right to argue the evidence, any reasonable deductions and inferences to be drawn from the evidence.* But in the long run ultimately the jury will have to rely on its own recollection as to what the evidence was." (Emphasis supplied.)

Of course, the trial court was in gross error in this ruling. A judge must not leave counsel with the unbridled right to argue anything he wishes to the jury, whether in evidence or not, subject only to the jury's recollection as to whether there was evidence on the point. Such a ruling, if correct, would absolutely eliminate any control by the court as to a lawyer's argument to the jury. Further, instead of being a reprimand, it implied approval of the lawyer's argument. The court refused to reprimand, but told the jury, in effect, for them to try to recollect whether there was evidence along the line argued by state's counsel. No partial corrective action was given to defendant, but the ruling was *absolutely against him in toto.*

The majority opinion originally urged: "In short, there was no request for *additional corrective action."* (Emphasis supplied.) *Additional corrective action, indeed!* There had been *no corrective action whatever;* the court absolutely and finally overruled defendant's objection, and gave tacit approval to the argument of state's counsel. There could be no *additional corrective action* until there had first been *some corrective*

*action!*

To illustrate how far afield the majority opinion is in this case, and as to its complete misunderstanding of the case, in its third write-up it has cited seven cases which it contends support its position that proper objections must be made to improper argument, and that none was made in the case now under consideration.

Four of the cited cases upon which the majority opinion relies deal with situations where *no objection whatever was made during the trial to the improper argument;* and it is too late to first raise such objection on appeal. These cases are *Joyner v. State,* 208 Ga. 435 (2), at 437 (67 SE2d 221); *Johnson v. State,* 226 Ga. 511 (5), at 514 (175 SE2d 840); and *Daniels v. State,* 230 Ga. 126, 127 (2) (195 SE2d 200); and *Kingston v. State,* 127 Ga. App. 660, 662 (4) (194 SE2d 675). We pause here to inquire as to whether the majority really understands the point at issue in this case?

The other three cases cited and relied on by the majority opinion deal with objections to argument where a *reprimand or other corrective action was taken by the trial judge,* such as instructing the jury not to consider the improper argument, and the objector failed to move for mistrial or for further corrective action. *Grice v. State,* 224 Ga. 376 (1) (162 SE2d 432); *Nelson v. State,* 187 Ga. 576, 577 (6), 583 (1 SE2d 641); *Lane v. State,* 118 Ga. App. 688 (3) (165 SE2d 474). But how different those cases are from the case sub judice, *where no corrective action whatever* was granted by the trial judge, but to the contrary, he sanctioned the improper argument of counsel, and told the jury to depend on their recollection of the evidence.

The seven cases cited in the third write-up do not strengthen the position of the majority opinion whatever, but rather illustrate how completely is this case misunderstood by it, through the citation of completely inapplicable authorities.

### THIRD ADDENDUM TO DISSENT.

Evans, Judge.

The majority opinion was written and the writer dissented. Then the majority opinion was re-written, and the writer added his first addendum to dissent. Then the

majority opinion was re-written a third time and the writer added his second addendum to dissent. *Now the majority opinion has been re-written a fourth time and the writer feels compelled to add his third addendum to dissent.* Need I add that the writer is standing by, fully expecting a fifth re-writing of the majority opinion, in which event a fourth addendum to dissent will follow in due course?

The majority opinion, as re-written a fourth time, no longer clings to the fallacious and erroneous theories advanced in the first three attempts to explain the affirmance of the lower court. We assume the majority recognizes that the writer's attacks upon them were meritorious, and that they are completely and finally withdrawn, with a brand-new theory now relied upon. For that I am grateful!

The fourth write-up by the majority *concedes that the argument by state's counsel was improper;* but contends the error was harmless and cites as authority *Fountain v. State,* 23 Ga. App. 113 (7) (98 SE 178). *Fountain,* supra, in no wise applies, because there the court corrected the error, as is shown at page 121.

The fourth and latest majority opinion now argues that the error was harmless as there was evidence admitted without objection to show "defendant fired a gun and that spent bullets and shell casings were found."

How does the above statement affect this case or render the improper argument harmless? It helps not one iota! The error is not rendered harmless!

The improper argument by state's counsel was as to *two other bullets,* and not as to the "spent bullets and casings (that) were found." The district attorney improperly argued: "Now, these people, Mrs. Myricks came in today and *brought me some bullets and things,* she not knowing about chain of evidence." (Emphasis supplied.) These were not the "spent bullets" to which the majority opinion makes reference, but these were as to two other bullets that the state voluntarily withdrew from evidence, being Exhibits 1 and 2. Tr. pp. 329-331.

The state, having voluntarily withdrawn the bullets from the evidence, knew well and good that they were not the proper subject of argument to the jury; and yet state's

counsel deliberately injected back into evidence, by his argument, the very items that he had voluntarily withdrawn, after numerous objections thereto by defendant's counsel.

When this improper argument was made (and we repeat that the last write-up by the majority *concedes that it was improper argument*), defendant's counsel immediately objected and the trial judge, under Code § 81-1009 was required to *take two corrective actions,* as follows, to wit: 1. Rebuke counsel, and 2. By all needful and proper instructions to the jury endeavor to remove the improper impressions from their minds.

The trial judge did neither the one nor the other, but used language that obviously *sanctioned the improper argument,* as follows: "Counsel has a right to argue the evidence, any reasonable deductions and inferences to be drawn therefrom."

The fourth write-up by the majority, although having changed bases and positions, leaves this case with a glaring error staring out at the whole wide world, waiting to be corrected.

"How long, O Catiline?"