**STATE of Missouri, Respondent,**

v.

**William Birch HUNT, Appellant.**

**No. 23025.**

Kansas City Court of Appeals.

Missouri.

May 9, 1960.

Warren D. Welliver and Alexander, Welliver & Wayland, Columbia, for appellant.

Scott O. Wright, Canestraight, Brown & Wright, Columbia, for respondent.

HUNTER, Presiding Judge.

William Birch Hunt was charged with violating Section 304.011, V.A.M.S.1949, by operating his automobile on an undivided Federal Highway about 1/2 mile west of Columbia, Missouri, at 8:50 p. m. on January 19, 1958, in excess of 65 miles per hour.

On change of venue the case was transferred from Boone to Callaway County. The jury trial resulted in a verdict of guilty and assessment of a fine of $400.

The sole contention of merit preserved for appellate review by proper objection and by inclusion in the motion for new trial is that the trial court erred in interrupting the examination of the defendant, in directing the defendant to step aside and in having the prosecuting attorney recall state witnesses to rebut defendant's testimony while the defendant was in the process of presenting his defense.

We proceed to set out the relevant events leading up to and describing the objected to incident.

The State's first witness was Highway Patrolman Robert E. Burgess who testified that he was operating a radar equipped Patrol Car about 1/2 mile west of the city

limits of Columbia. The apprehending Patrol Car was operated by Trooper Grazier and it was parked farther east about 1/4 mile and on the north side of the highway. Trooper Bill Smith was with Trooper Grazier.

At 8:50 p. m. Patrolman Burgess clocked a car at 76 miles per hour, which he testified was defendant's 1957 Oldsmobile tan station wagon. He radioed Trooper Grazier's car, described defendant's car, gave the first three numbers on its license plate and directed that it be stopped. It was stopped and defendant was given a summons.

Trooper Burgess also testified that including defendant's car, that night only three cars were checked in excess of the speed limit. A Cadillac had been stopped at 8:46 p. m., approximately four minutes before defendant's car appeared. Earlier, at 8:10 p. m. a Chevrolet car had been stopped.

Trooper Smith was the State's second witness. He testified he had remained in the apprehending car while Trooper Grazier stopped defendant's car.

Trooper Grazier also testified. He stated that after having been radioed the description of defendant's car and its first three license numbers and directed to stop defendant's car he did so. He also had stopped a Chevrolet at 8:10 p. m. and a Cadillac, and had issued summonses to their drivers.

The State's fourth and final witness was Norman Harrison, Chief Engineer of the Radio Division of the Highway Patrol. He did not witness the event in question, and testified only as to the technical operation of the radar unit.

The defendant then took the stand. He testified that he lived four miles west of Columbia and operated a pharmacy in Columbia. On the occasion in question he was on his way from his home to his pharmacy. By arrangement he was being followed to his store by Kenneth Davis, a pharmaceutical salesman, who was driving about 100 to 150 yards behind him. Mr. Tracy, a friend who had been with him earlier that evening had preceded him down the highway. According to defendant, and later corroborated by Davis, as defendant's car came to the crest of the hill just west of the radar location another car that looked like a Ford passed both him and Davis. Defendant stated he saw the radar car ahead and that his speed then was 60 miles per hour and that it was never more than that as he approached and passed the radar car.

During cross-examination he was asked:

"Q. Did you hear the troopers testify—there were three troopers testified, and they said there was no car that went through there from the time the Cadillac went through until you came through. Didn't you hear that?

"Mr. Wayland: Your Honor, I object to that. Because if you'll check the record I think you will find there was no such testimony.

"Mr. Wright: Well, that is the testimony, and—

"Mr. Wayland: There is no such testimony about other cars. We made particular note of it at the time. At no place in this record is there any testimony about other cars except the three that were stopped. I have it all through my notes.

"Court: Gentlemen, I don't remember exactly. I thought there weren't any other cars went through there, but you can ask the trooper again to make sure—

"Mr. Wright: I will.

"Court: If you want to, I'll permit you to put the trooper back on the stand, and take him off a minute, and then put him back. The Court doesn't remember."

Trooper Burgess was put on the stand and examined as follows by the prosecuting attorney:

"Q. Trooper Burgess, you testified here this morning that a 1957 Cadillac went through at 8:46 p. m., isn't that right? A. Yes, Sir, that's correct.

"Q. And that that car was exceeding the speed limit at 71 miles per hour, and you had it stopped, right? A. That is correct, yes, Sir.

"Q. Was there any car that went through from the time that car went through until the time defendant's car went through? A. The defendant's car was the first car to come through after the Cadillac.

"Q. After the Cadillac? A. Yes, Sir.

"Q. And let me ask you this: Was there any car that went through the same time as the defendant's car? A. There was not.

"Q. Or was there any car that went through immediately before he did? A. There was not.

"Q. Or was there any car immediately behind him? A. There was not.

"Q. There was no car in view when he went by your radar unit, is that right, from behind, the west, coming east? A. That was the only car that could be seen, yes, Sir.

"Mr. Wright: That's all.

"Court: Do you want to cross-examine?

"Mr. Alexander: No."

The prosecuting attorney then called Patrolman Grazier and asked:

"Q. You testified that you stopped a 1957 Cadillac up on across from where you were located, isn't that correct? A. Yes, Sir.

"Mr. Alexander: If the Court please, at this stage of the game I think it's getting a little ludicrous. I think the prosecuting attorney has the right for rebuttal testimony, but I don't think he has the right to interrupt the defendant's testimony to do so. We object to the proceedings.

"Court: Gentlemen, this is at the Court's instance, because the Court did not remember exactly what the testimony was. I thought it was as the last trooper has testified, but I wasn't sure. This testimony is permitted at the direction of the Court in order to clear that one point. I don't want to interrupt the defense, and I'll let the defense proceed in just a moment, as soon as we hear what this patrolman has to say about the cars passing.

"Q. (By Mr. Wright) You stopped this '57 Cadillac? A. Yes.

"Q. And what time did you stop the '57 Cadillac? A. 8:46.

"Q. Now, Trooper Grazier, I'll ask you, was there any other car that came through, that came up there, between the time that you stopped the '57 Cadillac and the time you stopped the defendant? A. No, Sir.

"Q. And was there any other cars besides the '57 Cadillac on the south shoulder of the road in that area at the time that you stopped the defendant? A. No, Sir.

"Q. When you stopped the defendant there were two cars there, right? Now, was there any other car that came through immediately behind the defendant, immediately following the defendant? A. No, Sir.

"Mr. Wright: That's all.

"Court: You may step down.

"Mr. Wright: I'd like the record to show that Trooper Bill Smith would testify to the same thing.

"Court: I'll let you put him on in rebuttal. I just wanted to clear the Court's mind. I'm sorry for the interruption."

Thereafter, the prosecuting attorney continued defendant's cross-examination by asking:

"Q. Now, Mr. Hunt, are you as sure of your testimony as to the speed of your automobile as you are as to whether or not you had been previously stopped previous to this night by highway patrolmen, and whether or not there was a car passing you that passed you at the top of that grade and proceeded through there immediately ahead of you, and that there was a car just behind you? Are you as sure of all that as you are of your speed? A. I'm sure of the car behind me and the car going around me. As I said, I thought that needle was on 60 as I went down that hill.

"Q. And you're just as sure of the two cars being stopped out on the shoulder of the road? A. I'm positive of that.

"Q. Uh-huh. And you're just as sure that those troopers weren't in sight of each other? Is that your testimony, that those troopers—the one in the radar car couldn't see the boys up on the hill? Is that your testimony? A. Mr. Wright no human being standing on that highway off on the shoulder can see the bottom of that hill. Yes, Sir, that's my testimony.

"Q. Mr. Hunt, don't you know for a fact that that isn't true? A. Well, I—

"Q. Don't you know that these troopers and I have stood out on that road dozens of times, and you can see plainly down at the bottom of that grade? A. I took three people out there myself, and you can ask them if what I said isn't true."

After defendant had completed his case, the prosecuting attorney called as a rebuttal witness Trooper Smith who was asked,

"Q. Now, Trooper, I'll ask you this question: Could you at all times see the radar car and the traffic coming by the radar car? A. Yes, Sir.

"Q. Now, I'll ask you, was there a car that came past that radar car immediately in front of Mr. Hunt? I'll put it this way—strike that question. Was there a car that came past the radar car between the time the 1957 Cadillac came through and was stopped, and Mr. Hunt's car? A. No, Sir.

"Q. And was there a car as Mr. Hunt's car came past the radar car, was there a car immediately behind him? A. No, Sir.

"Q. Did you even see a car coming—was there any car between Mr. Hunt's car as it came by the radar car and the crest of that hill to the west? A. I didn't see any."

The usual and proper order of trial in a criminal proceeding is set out by statute, Section 546.070, V.A.M.S.1949:

"546.070. Order of trial

"The jury being impaneled and sworn, the trial may proceed in the following order:

"(1) The prosecuting attorney must state the case and offer the evidence in support of the prosecution;

"(2) The defendant or his counsel may then state his defense and offer evidence in support thereof;

"(3) The parties may then respectively offer rebutting testimony only, unless the court, for good reason in furtherance of justice, permit them to offer evidence upon their original case; * * *."

**510**

The State's counsel takes the position that the trial court has a sound discretion which he may exercise as to the order of proof and that he did not abuse that discretion in having the defendant step aside and in recalling the two troopers for their testimony, citing such cases as State v. Kauffman, 335 Mo. 611, 73 S.W.2d 217; State v. Kornegger, 363 Mo. 968, 255 S.W. 2d 765; State v. England, 321 Mo. 633, 12 S.W.2d 37.

We do not agree with the contention that the trial judge did not abuse whatever discretion he may have had in the matter in changing the usual order of trial and in permitting the described event and testimony. The plain and practical effect of his action, even though unintended, was to materially prejudice the defendant in making his defense. It deprived the defendant of his right to put on his defense in an orderly manner free of unreasonable and deliberate interruption of a highly prejudicial nature. It gave an unfair advantage to the State's case by interrupting the defendant's testimony midway, to defendant's obvious disadvantage, to allow two officers to be recalled to give testimony beyond their own testimony in chief, contrary to and in rebuttal of defendant's interrupted testimony, reserving the third officer's testimony for later rebuttal. This testimony taken out of order not only improperly overemphasized the State's evidence but also, when coupled with the comments of the court, had the effect of an unfavorable judicial comment on the credibility of the defendant as weighed against the credibility of the officers. It necessitates the granting of a new trial to defendant. Cf. Watson v. Aronberg, Mo.App., 15 S.W.2d 356, 359; Harms v. Simkin, Mo.App., 322 S.W.2d 930, 938.

Appellant also contends there were other errors made during the trial. However, we need not examine these contentions for they are not such as are likely to occur on a new trial.

The judgment is reversed and this cause is remanded for a new trial.