**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Roland Joseph HICKEY, Defendant and Appellant.**

No. 12460.

Supreme Court of South Dakota.

Decided Jan. 16, 1980.

John P. Guhin, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Charles Rick Johnson of Johnson, Johnson & Eklund, Gregory, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Defendant Roland J. Hickey, charged with the premeditated homicide of Roland "Dude" Lux, was convicted in a trial by jury of first-degree manslaughter and sentenced to forty years in the state penitentiary. Defendant appeals from this judgment of conviction. We affirm.

## FACTS

Defendant and decedent, "Dude" Lux, had been good friends. Decedent was married to defendant's first cousin. Evidence established that trouble developed between them when they had been drinking.

Defendant had suffered from a binge drinking problem since high school for which he twice sought treatment. He became somewhat surly when drinking. Decedent was also incapable of handling liquor and was known to become violent and irrational when he drank. According to people in the community, the decedent was a man of large stature and would beat on people for no apparent reason when intoxicated. Their relationship began deteriorating in 1977, when decedent, allegedly without provocation, attacked defendant several times that year. During one fighting bout, the Chamberlain Police Department placed defendant in jail for protective custody.

The slaying occurred on the night of September 3, 1977. Both men began drinking early that evening at separate locations. Later that evening, both men visited the Fireside Lounge in Oacoma, South Dakota, where they continued drinking. Various witnesses testified that the decedent was loud and boisterous that night and had threatened to pummel defendant.

Shortly before closing, decedent approached defendant and invited him to his home for a few beers. Defendant and a friend, Allan Kenobbie, drove to decedent's home and waited in the pickup until decedent arrived. The evidence is undisputed that after decedent drove up, he walked towards defendant's pickup hollering that he was going to "whip" him. He hit defendant in the face through the open window, jerked the door open, and tried to drag him out. Kenobbie testified that he went around the pickup in an attempt to ward off the fight. Decedent then wrestled Kenobbie to the ground, and upon his friend's insistence, defendant sped away. Defendant testified that he was fearful that decedent would come after him and possibly kill him. He then hurried home, grabbed a gun, and rushed back to decedent's residence.

Three different versions were offered concerning what then transpired. Defendant maintains that he never returned with the intent of killing decedent; he believed that having a gun would be sufficient to prevent decedent from pursuing further attacks. According to defendant, decedent approached the pickup claiming, "I'm going to finish you off this time." Defendant warned decedent that he had a gun. Defendant testified that the last he remembered, decedent hit the gun, which flew up and hit defendant in the face. He maintained that it was at this time that the gun discharged.

Allan Kenobbie testified that although he had lost his glasses in the fracas with dece-

dent, he observed decedent approach the pickup and was at arm's length from the door when the shot was fired. Kenobbie's testimony substantiated defendant's story that decedent threatened him upon his return.

Violet Lux, decedent's wife, offered testimony to the contrary. She testified that she never overheard decedent threaten defendant after he returned. According to Mrs. Lux, as both she and decedent were walking towards the pickup, decedent suddenly stumbled and went down. She only heard a small "blip," and did not realize that decedent had been shot until she noticed defendant's gun pointed out the window. Mrs. Lux maintained that decedent was shot from a distance of approximately five to six feet.

Defendant contends that the change in trial procedures and certain evidentiary rulings, highly prejudicial to his case, demands a reversal. Defendant's assignments of error raise the following legal issues set forth below.

### ISSUES

(1) Did the trial court err in ordering defendant to proceed with his case before the State had rested and then allowing the State to interrupt defendant's case with allegedly prejudicial evidence?

(2) Did the trial court abuse its discretion in refusing to permit defendant a one-day continuance for the purpose of securing a witness' testimony deemed important to defendant?

(3) Did the trial court err in refusing to admit into evidence a written statement of a witness near the scene of the homicide?

### DECISION

#### I.

In appellant's first assignment of error, he asserts that the trial court erred when it permitted the order of trial to be changed.

The transcript reveals that on the second day of trial the State had completed its case in chief with the exception of one witness, a special agent of the FBI, who had conducted ballistic tests on the rifle allegedly used in the slaying and a microscopic examination on the victim's shirt for gunpowder residue. The State had not rested. FBI Agent Schmidt was unable to testify that day because he was stranded in Chicago, and no flights out were available until later that evening. Outside the presence of the jury, the court made inquiry as to the substance of the witness' testimony. The State informed the court and defense counsel that Schmidt's testimony would reveal that no gunpowder residue was found on decedent's shirt. The State also divulged that Schmidt could not testify regarding the actual distance from which the gun was fired. However, Schmidt's testimony would also indicate that it was not a close contact shot. Through this testimony, the State intended to prove that decedent was not in a close proximity to the gun when it was fired. The court ordered defense counsel to proceed, reasoning that defense counsel knew the substance of Schmidt's testimony. Further, due to severe storm warnings in the area, there was no guarantee that Schmidt would arrive to timely testify.

Defense counsel strenuously objected to this deviation from the customary order of trial as set forth in SDCL 23–42–6,[1] claiming that before a defendant can be compelled to proceed, the State must present its entire case in chief against him. Defendant contends, relying on State v. Magnuson, 46 S.D. 156, 191 N.W. 460 (1922), that if counsel has reserved his opening statement, he cannot be compelled to proceed with the same until the State has rested. Defendant's reliance on State v. Magnuson, supra, is misplaced.

In Magnuson, this court merely held that the rule relating to the order of trial procedure could not be implemented to compel the defendant into making an opening statement. The court went on to say, however, that should a defendant elect to make an opening statement, there is no reason

---

1. This section has been reenacted as SDCL 23A–24–2.

why the court should not require it prior to the introduction of the State's evidence. According to the court, such a statement would aid the trial court in ruling upon the admissibility of the evidence.

 Defense counsel cannot control the order of proof at trial; it rests in the sound discretion of the trial court. *State v. Best*, 232 N.W.2d 447 (S.D.1975); *State v. Giuliano*, 270 N.W.2d 33 (S.D.1978). Therefore, by merely reserving the right of an opening statement, defense counsel cannot dictate to the court at what stage in the proceedings it will be offered. *State v. Magnuson*, supra. Defendant cannot now claim that he was compelled to make an opening statement, which he could have waived, on the basis of the court's order directing defense to proceed in the manner defendant had requested.

SDCL 23–42–6 outlines the order in which a trial must proceed. However, SDCL 23–42–7[2] provides: "When the state of the pleadings requires it or in any case for good reasons and in the sound discretion of the court, the order of trial and argument prescribed in § 23A–24–2 may be departed from."

This court has not given a definitive interpretation of this statute. The Supreme Court of North Dakota, in interpreting Section 29–21–02, N.D.C.C., which is worded precisely as SDCL 23–42–7, has held that the trial court, in the exercise of its discretion, may change the order of trial, and absent any showing of abuse, a trial judge's exercise of that power will not be disturbed on appeal. *State v. Otto*, 245 N.W.2d 885 (N.D.1976); *State v. Iverson*, 187 N.W.2d 1 (N.D.1971), *cert. denied*, 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).

While the order in which testimony may be introduced is largely within the discretion of the trial court, *State v. Burmeister*, 65 S.D. 600, 277 N.W. 30 (1937), we must determine whether the trial court abused its discretion by allowing this testimony to be taken out of order. Here, defense counsel had called three witnesses on the after-noon of the second day of trial. When court reconvened the following morning, the State's witness, having arrived, was called to testify. Defendant claims that such a marked departure from the customary offer of proof materially prejudiced his case, for it enabled the State to interject rebuttal testimony during its case-in-chief.

Defendant relies on *State v. Hunt*, 335 S.W.2d 506 (Mo.App.1960). *Hunt* involved a traffic case wherein the defendant took the stand in his own defense on a charge of speeding. The trial court allowed the prosecution to interrupt defendant's testimony by recalling two police officers to ask them questions the State had neglected to ask them during their direct examination. The Missouri Court of Appeals held that the trial court abused its discretion in changing the usual order of trial, for it enabled the officers to give testimony beyond their own testimony in chief, contrary to and in rebuttal of defendant's interrupted testimony. The plain and practical effect of this action, according to the court, not only improperly overemphasized the State's evidence but also materially prejudiced defendant in making his defense.

A somewhat similar factual situation was presented in *State v. Iverson*, supra. Iverson, charged with murder in the first degree, took the stand at trial to testify on his own behalf. On cross-examination, the State asked him to identify his signature on a photostatic copy which was purported to be a statement of rights signed by Iverson prior to his interrogation after his arrest. Iverson first denied that it was his signature, but later stated he could not positively identify it as his own. The State then asked that several officers, who had witnessed Iverson signing a statement of rights, be sworn and allowed to testify that Iverson had signed the original. The trial court directed Iverson to step down while a police officer testified that Iverson had in fact signed a statement of rights. When Iverson returned to the stand, he denied making the statement contained in the transcript of his interrogation.

**2.** This section has been reenacted as SDCL 23A–24–3.

The court in *State v. Iverson*, supra, distinguished *State v. Hunt*, supra, stating that the interruption here was simply for the purpose of verifying Iverson's signature, whereas in *Hunt*, it was for the purpose of filling in vital gaps in the State's case. The court went on to say: "We are satisfied that this interruption of Iverson's testimony on cross-examination was not an abuse of discretion and that, accordingly, the trial court acted within the power given it under Section 29–21–02, N.D.C.C." *State v. Iverson*, supra, at 39.

In light of the fact that N.D.C.C., Section 29–21–02, phrased identically to SDCL 23–42–7, has been interpreted to allow a trial court, in the exercise of its discretion, to interrupt the actual testimony of a defendant, we hold that in the absence of abuse of discretion, SDCL 23–42–7 allows a trial judge, upon a showing of good cause, to deviate from customary trial procedures by way of admitting additional testimony outside a party's case-in-chief. We find no abuse of discretion in the admission of Schmidt's testimony under the circumstances presented here.

Defendant was not left to speculate as to what facts of the State's case he was required to disprove before proceeding with his opening statement and testimony. The State disclosed the substance of Schmidt's testimony. His testimony did not exceed the parameters outlined by the State. The fact that witness Schmidt was allowed to give opinion testimony with regard to the amount of gunpowder residue that might be found on a victim's skin or clothing at various firing distances cannot be viewed as prejudicial or offered in the nature of rebuttal testimony. The three witnesses whom defense counsel called the previous day did not observe the actual shooting or relate the manner in which it occurred. Their testimony rested in large part on the relationship between defendant and decedent and defendant's condition and physical appearance immediately following the shooting. Defendant seems to suggest that the mere mention during defense counsel's opening statement that the gun was fired within an approximate distance of two feet, gave the State an unfair advantage because it was then capable of rebutting his defense during its case-in-chief. We disagree, for defense knew well in advance that Schmidt's testimony would show that decedent was not within a close proximity to the gun when it was fired. Furthermore, there was some conflict in the State's two eye-witness accounts concerning the distance between decedent and defendant when the shot was fired. The State attempted to establish the approximate distance under hypothetical circumstances. Thus, the testimony offered within this context was not prejudicial or in rebuttal to defendant's case.

The situation presented here can be analogized to the principle that the court has wide discretion in permitting the State to introduce additional evidence after it has closed its case. *State v. Larkin*, 87 S.D. 61, 202 N.W.2d 862 (1972). A case of particular application is *Bentley v. State*, 131 Ga.App. 425, 205 S.E.2d 904 (1974), wherein the State had completed its direct presentation in the trial on an aggravated assault charge, with the exception of the testimony of a doctor who had treated the wounded child. The physician was absent and would not be available until the following day due to his duty assignment with a terminally ill patient. The trial judge, after making inquiry with regard to the doctor's anticipated testimony, ordered the defense to proceed. The Court of Appeals of Georgia held that there was no abuse of discretion in allowing the State to reopen its case. The court adopted the view that in this instance the trial judge "took ample precaution to insure defendant of a fair trial by his limitation upon the doctor's testimony and thereby enabling defense counsel to deal with the anticipated medical testimony." *Bentley v. State*, supra, 205 S.E.2d at 910.

We find the court's rationale based on the facts and circumstances presented in *Bentley* supportive of our holding that the trial court did not abuse its discretion. The trial court demonstrated good cause in ordering the defense counsel to proceed even though

the State had made known it would call an additional witness. The trial court was careful to limit Schmidt's testimony to only that which the State revealed he would testify. At the time in which Schmidt would have normally been called to testify, he was stranded in Chicago and there was no guarantee that he would be available the following day because of severe storm warnings in the area. The defense had indicated that it would be calling approximately nineteen witnesses. When Schmidt finally arrived, the court was aware that he was scheduled to testify in another trial that week. Therefore, in the interests of justice and to expedite the proceedings, the court demonstrated good cause and did not abuse its discretion in changing the order of trial.

## II.

Defendant contends secondly that the trial court abused its discretion in refusing to permit a one-day continuance for the purpose of securing the testimony of a witness deemed material to defendant's case.

On the third day of trial, shortly before court adjourned, the defense was prepared to rest with the exception of one additional witness, decedent's father-in-law, whom defendant learned had been hospitalized that day for observation relating to a heart problem. That evening, defense counsel had arranged a telephone call deposition which the doctor later advised against in view of the witness' condition. The following day of trial, counsel moved the court to grant him a one-day continuance for the purpose of securing either the witness' presence or his deposition. In proceedings in chambers, the court made inquiry of the proposed testimony and the likelihood of securing it within one day. The State objected to the continuance on the grounds that there was no assurance that the witness would appear and that the evidence would be both cumulative and hearsay. The court denied the continuance.

This court on numerous occasions has held that the granting of a continuance is within the sound discretion of the trial court, and its ruling will not be reversed on appeal unless there has been a clear abuse of discretion. *State v. Lohnes*, 266 N.W.2d 109 (S.D.1978); *State v. Pickering*, 245 N.W.2d 634 (S.D.1976); *State v. Barcley*, 88 S.D. 584, 225 N.W.2d 875 (1975).

Defense counsel admitted that he did not think the witness would be available the following day to testify and that there could be as much as a three-day delay before his doctor would allow a deposition to be taken. Moreover, the transcript is replete with similar testimony of five other witnesses concerning decedent's drinking and fighting nature which defendant sought to procure through deposing the witness.

■ The fact that the proffered evidence appeared merely cumulative, and given that defendant did not meet his burden of proving that the witness would be in sufficiently good health to either appear or give a deposition within one day, the court did not abuse its discretion in refusing to grant a continuance. *See State v. Barcley*, supra; *State v. Sonnenschein*, 37 S.D 139, 156 N.W. 906 (1916).

## III.

Defendant asserts as his third assignment of error that the trial court erred in refusing to admit into evidence the nonverified written statement given by an individual witness near the scene of the homicide.

Defendant requested an in-state subpoena to secure the attendance of the witness one day after the start of trial. It was returned unserved because the witness had moved and was now living in Nebraska. This witness had been interviewed by Deputy Sheriff Michalek the day after the shooting. Deputy Michalek took a written statement from the witness, who outlined the events as he had perceived them the evening of the shooting.

Defendant felt it important to reinforce his version of the disputed facts; namely, that upon his return to decedent's home, he had brought his pickup to a complete stop before any shot was fired. The witness'

written statement supported this contention.

At trial, Deputy Michalek testified that he could not remember if the witness had stated how long the vehicle was stopped. Defense counsel offered into evidence the witness' written statement, which indicated he had heard the pickup stop twenty to thirty seconds before the shot was fired.

Defendant contends, citing *State v. Thompson*, 71 S.D. 319, 24 N.W.2d 10 (1946), that such evidence, which would otherwise be hearsay, is clearly admissible if introduced solely for the purpose of impeaching a witness. Thus, we need not address whether this evidence was admissible under other exceptions to the hearsay rule.

The admissibility of such evidence is contingent upon satisfying all the rules applicable to it in the capacity in which it is offered. *State v. Thompson*, supra. The written statement upon which defendant contends Deputy Michalek can be impeached was not his own, but that of the witness. In addition, this evidence is admissible for impeachment purposes only as it relates to inconsistent statements of fact on material issues.

Granted, whether defendant had in fact stopped the pickup before the shot was fired was material to defendant's case. However, Deputy Michalek's testimony at trial did not conflict with any of his earlier statements on that point. On cross-examination, Deputy Michalek responded merely that he could not remember what the witness had related regarding the time between when the pickup had stopped and when the shot was fired.

■ A review of the record reveals, however, that defendant was nonetheless able to get that portion of the written statement before the jury. Defense counsel asked Deputy Michalek to read an excerpt from the witness' written statement regarding the time lapse of when he heard the pickup stop and the shot fired.

MR. JOHNSON: Well, doesn't that statement say that?

DEPUTY MICHALEK: Twenty to thirty seconds it says.

Therefore, defendant was not prejudiced by its exclusion.

We have considered defendant's contention that the trial court erred in other evidentiary rulings, and we find them to be without merit.

The judgment of conviction is affirmed.

All the Justices concur.